[Cite as *State v. Wilder*, 2016-Ohio-251.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
VAN WERT COUNTY

STATE OF OHIO,                                        CASE NO. 15-15-08

     PLAINTIFF-APPELLEE,

     v.

                                  O P I N I O N

MOSES D. WILDER,

     DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR 15-01-007

Judgment Affirmed

Date of Decision:  January 25, 2016

APPEARANCES:

    *Rachel L. Franklin* for Appellant

    *Eva J. Yarger* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Moses D. Wilder ("Wilder") brings this appeal from the judgment of the Court of Common Pleas of Van Wert County entering a judgment of conviction for one count of domestic violence and one count of rape. Wilder claims that the trial court erred by 1) denying his challenges for cause to jurors, 2) allowing testimony regarding battered spouse syndrome, and 3) by not permitting his proposed jury instructions. Wilder also claims that the jury's verdict was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} On January 9, 2015, the Van Wert County Grand Jury indicted Wilder on two counts: 1) Domestic Violence in violation of R.C. 2929.25(A), (D)(4), a felony of the third degree and 2) Rape in violation of R.C. 2907.02(A)(2), a felony of the first degree. Doc. 2. A jury trial was held on May 11-12, 2015. Doc. 34. At trial the following relevant testimony was given.[1]

*Trial Testimony*

{¶3} Wilder and the victim had been in an "off and on" relationship for four years prior to the incident forming the basis of the charges. Tr. 50. From November 2014 until January 2015, they were living in the same home along with the victim's two children. Tr. 49. On January 2, 2015, the victim asked Wilder to

---

[1] Testimony concerning whether there was penetration and the DNA recovered from the exam will not be addressed. Wilder did not dispute that he had engaged in sexual intercourse with the victim. He claimed the intercourse was consensual.

leave the home and he moved into the Fountain Inn. Tr. 52-53. According to the victim, she asked Wilder to leave because "he was talking crazy." Tr. 52. On January 7, 2015, the victim went to see Wilder at the Fountain Inn to take him to the store. Tr. 53. After they ran some errands, they returned to the victim's home. Tr. 54-55. When they entered the home, Wilder pushed the victim down and searched the house to look for other people there, because he believed that the victim was cheating on him. Tr. 55-56. According to the victim, Wilder then started hitting her with his hand, pushing her around, and choking her. Tr. 56. Wilder told the victim that he hoped she would die. Tr. 57. Wilder threw the victim into the bathroom and told her to "get on your knees and ask me forgiveness." Tr. 57. To make him stop, the victim kept reminding Wilder that he had a meeting. Tr. 58.

{¶4} Eventually Wilder calmed down and told the victim that he would go with her in the car to run errands. Tr. 58. She then went into the Dollar Tree to turn in an application. Tr. 58. The victim was in tears, but no one said anything to her. Tr. 58. After they left the Dollar Tree, they went to "Cooper's" for Wilder's appointment. Tr. 59. Wilder got out of the car and was inside for approximately five minutes. Tr. 59. When Wilder returned to the car, he demanded sex from the victim, but she refused. Tr. 59. The victim returned Wilder to the Fountain Inn and Wilder yelled at her to come into the hotel room with him. Tr. 59-60. The victim started walking up to the room and Wilder shut the door to the hotel room,

so she returned to the car. Tr. 60. Before she got into the car, Wilder opened the hotel room door again and yelled at her to get in the room. Tr. 60. Once in the room Wilder told the victim that she would have sex with him or she "was going to die that day." Tr. 61. According to the victim, Wilder also threatened her children and the rest of her family. Tr. 61. The victim then removed her pants and shoes and lay on the bed. Tr. 61. Wilder then engaged in sexual intercourse with her and penetration occurred. Tr. 62. When Wilder was done with her, he threw her against the door and accused her of being unfaithful. Tr. 61. Wilder also warned her not to tell anyone or he would "come back and get [her]." Tr. 62. The victim then returned to her car and left. Tr. 62.

{¶5} After leaving the Fountain Inn, the victim went to her friend's home. Tr. 69. Someone called the police, but it was not the victim as she was afraid. Tr. 69. An officer came to meet with her and asked her to complete a complaint form for domestic violence. Tr. 70. The victim was not able to complete the form because her right arm "was messed up." Tr. 71. As a result of Wilder's actions, the victim "had scratches on [her] face and knots on [her] head, big bruise on [her] shoulder." Tr. 72. The victim indicated that she had been afraid that if she did not allow Wilder to have sexual intercourse with her, he would harm her. Tr. 73.

{¶6} On cross-examination, the victim admitted that she had been allowed to enter the Dollar Tree alone while Wilder remained in the car. Tr. 89. The victim also admitted that she had not tried to lock Wilder out of the car at any time

-4-

and that she was alone in the car while Wilder was in the office at Cooper's. Tr. 90, 92.

**{¶7}** The next witness was Officer Greg Blackmore (" G. Blackmore") of the Van Wert City Police Department. Tr. 94. G. Blackmore testified that he was sent to speak with the victim after the department was notified of the possible sexual assault. Tr. 96. When he arrived at the location, he saw the victim "sitting at the kitchen table, upset, crying, looking like a look, a dazed look, maybe shock or something like that." Tr. 97. G. Blackmore had to ask the victim to calm down several times so that he could understand what she was saying. Tr. 98. He observed scratch marks on the victim as well as "some lumps" on her head. Tr. 98. Due to the victim's complaints of pain, he called for medical assistance. Tr. 99. G. Blackmore testified that he had to complete the domestic violence complaint form for the victim because the victim was unable to use her right hand. Tr. 99-100. At the bottom of the form, the victim signed using her left hand. Tr. 100. After the victim had signed the complaint form, G. Blackmore and a couple of other officers went to speak with Wilder. Tr. 103-104. Wilder was arrested that day. Tr. 104. On cross-examination, G. Blackmore testified that although he took photographs of all alleged injuries, he did not personally see visible signs of all of the injuries claimed. Tr. 107.

**{¶8}** Detective Joseph Motycka ("Motycka") of the Van Wert City Police Department testified third. Tr. 114. Motycka testified that he went to the hospital

to follow up with the victim. Tr. 116. The victim appeared to be very upset and cried the majority of the time that he spoke with her. Tr. 116. Motycka personally observed "an abrasion on [the victim's] left temple area, some swelling and a bump on the central area of her forehead, and a busted lower lip which [the victim] showed [him], on the interior of the lip." Tr. 117. Motycka also testified that Wilder had two prior convictions for domestic violence offenses. Tr. 123.

{¶9} On cross-examination, Motycka testified that the victim had not told him that she had remained in the car for a while before joining Wilder in his hotel room. Tr. 131. Motycka also testified that the victim told him she ran out of the room to the car. Tr. 134. On re-direct Motycka indicated that it would not be unusual for discrepancies to arise in a victim's story due to the state of mind the victim has when giving a statement. Tr. 135. Sometimes the discrepancies are caused by emotions and at other times, they are indicative of a lie. Tr. 136.

{¶10} Kathy Schaadt ("Schaadt") testified that she is a registered nurse at the Van Wert Hospital and is a trained Sexual Assault Nurse Examiner ("SANE"). Tr. 137-38. Her job is to collect the evidence to support the case. Tr. 141. During the exam, the victim appeared to be visibly upset and was wearing a C-collar due to reported injuries. Tr. 145. Schaadt testified that she photographed the visible injuries, including abrasions to the victim's face, shoulder, and back. Tr. 147. Schaadt indicated that she observed fresh bruising on the face of the

victim. Tr. 149. On cross-examination, Schaadt testified that all of the tests for injuries done on the victim came back normal. Tr. 158.

{¶11} Detective Sergeant Jeffery Blackmore ("J. Blackmore") with the Van Wert City Police Department testified that he served a search warrant on Wilder at the jail to obtain a DNA sample. Tr. 161-63. While obtaining the sample, Wilder admitted that sexual intercourse had occurred, but claimed that it was consensual. Tr. 163. Wilder also told J. Blackmore that he suspected the victim of cheating on him. Tr. 165.

{¶12} After J. Blackmore testified, the State rested. Tr. 178. Wilder rested his case without presenting any evidence. Tr. 181. The jury deliberated and found Wilder guilty of both counts. Doc. 52. The sentencing hearing was held on June 22, 2015. Doc. 58. The trial court sentenced Wilder to an aggregate sentence of ten and a half years in prison. *Id.* Wilder appealed from this judgment and on appeal raises the following assignments of error.

### First Assignment of Error

**The trial court erred by allowing the [Appellee] to introduce prejudicial testimony of battered [spouse] syndrome which outweighed any probative value.**

### Second Assignment of Error

**The jury verdict is against the manifest weight of the evidence.**

**Third Assignment of Error**

**The trial court erred in its denial of Appellant's challenges for cause, as such a denial was an abuse of discretion.**

**Fourth Assignment of Error**

**The trial court erred in not including Appellant's proposed jury instruction of "Reverse Flight Jury Instructions".**

In the interest of clarity, we will address the assignments of error out of order.

*Denial of Challenges for Cause*

**{¶13}** In the third assignment of error, Wilder claims that the trial court erred in denying his challenge to a juror for cause. A juror in a criminal case may be challenged for bias toward the defendant or the State. R.C. 2945.25(B). However, no juror need be disqualified for bias if the trial court, after examination of the juror, is satisfied that the juror can "render an impartial verdict according to the law and the evidence submitted to the jury at the trial". *Id.* A trial court has broad discretion to determine a juror's ability to be impartial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 73, 911 N.E.2d 242. "Thus, where a prospective juror is being challenged for bias, '[d]eference must be paid to the trial judge who sees and hears the juror.'" *State v. White*, 82 Ohio St.3d 16, 20, 693 N.E.2d 772 (1998), quoting *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

**{¶14}** When determining whether a denial of a challenge to a juror for cause is prejudicial error, the relevant inquiry is whether the jury panel as a whole

was affected by the trial court's error. *Gray v. Mississippi*, 487 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). "[I]n order to state a constitutional violation in this situation, the defendant must use all of his peremptory challenges and demonstrate that one of the jurors seated was not impartial." *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682. When a defendant exhausts his peremptory challenges before the full jury is seated, the erroneous denial of a challenge for cause may be prejudicial to the defendant. *State v. Williams*, 79 Ohio St.3d 1, 1997-Ohio-407, 679 N.E.2d 646. "The reason for this rule is that an error by the trial judge in overruling a challenge for cause forces the defendant to use a peremptory on a prospective juror who should have been excused for cause, giving the defendant fewer peremptories than the law provides." *Id*. at 8.

**{¶15}** Here, Wilder challenged the inclusion of Juror Walsh for cause and the trial court denied the challenge. Wilder then used a peremptory challenge to excuse Walsh. The basis for the challenge was that Walsh indicated that Motycka was his "wife's niece's husband." Voir Dire Tr. 7. The trial court asked Walsh whether this would affect his ability to be fair and impartial and Walsh responded it would not. Voir Dire Tr. 7. Later, counsel for Wilder questioned Walsh further regarding the relationship.

> **Mr. Meyers: Just real quick. Cause some of the legal stuff that we lawyers do is all mumbo jumbo, this is pretty straight up. You know what's going on. Can you be fair and impartial in this case?**

**Juror Walsh:** Yes, I could. But it's like I said, you know, if I could find him not guilty and you'd come over to the house (INAUDIBLE) for get togethers and everything, I don't want that to happen.

**Mr. Meyers:** So to say that you don't want that to happen, is that, it would just be hard not to let that outside the courtroom concern[.]

**Juror Walsh:** This would be hard, yes.

**Mr. Meyers:** All right. Would you then think that your service would be better in a different case . . .

**Juror Walsh:** Yes[.]

**Mr. Meyers:** . . . where he's not involved[?]

**Juror Walsh:** Yes, it would, yes it would[.]

**Mr. Meyers:** So in the end it would be, could you really honestly be fair and impartial if you're asked to sit, he'll be testifying, he's in the court, he'll be in the court . . .

**Juror Walsh:** I could be fair and impartial, yes I could.

**Mr. Meyers:** Ok.

**Juror Walsh:** Plain and simple, yes I could.

Voir Dire Tr. 35-36. Although the prospective juror indicated that being fair and impartial would be difficult, he indicated that he could do so. The trial court determined that the juror could be fair and impartial and denied the challenge for cause. Based upon the statements by the prospective juror, the trial court did not abuse its discretion in reaching its conclusion. Additionally, Wilder does not argue that any of the jurors who actually sat on the jury were not impartial.

Therefore, Wilder was not denied his right to an impartial jury and the third assignment of error is overruled.

*Statements Regarding Battered Spouse Syndrome*

{¶16} In the first assignment of error, Wilder claims that the trial court erred by allowing evidence of battered spouse syndrome to be presented. The State in this case wished to present evidence that the victim had been subjected to domestic violence previously in an effort to explain why she did not attempt to escape from Wilder. The matter was extensively discussed in a sidebar. Tr. 74-82. The trial court then allowed the State to ask very limited questions. In total, the State's mention of anything related to battered spouse syndrome consisted of the following.

> **Ms. Yarger: What kind of home life did you have when you were a kid?**
>
> **Mr. Meyers: Objection. Relevancy[.]**
>
> **The Court: What's the relevancy of this?**
>
> **Ms. Yarger: Your honor, again it goes to her state of mind. We are attempting to establish the battered spouse syndrome. The battered woman . . .**
>
> **Mr. Meyers: Objection, may we approach and argue this off, at sidebar?**
>
> **\* \* \***
>
> **Ms. Yarger: When you were a child, before you met the defendant, was there a [sic] domestic violence in your home?**

**[The victim]: Yes ma'am.**

**Ms. Yarger: How often?**

**[The victim]: I believe that we were in the shelter at least three times a year, if not more.**

**Ms. Yarger: Ok, so you experienced this when you were a child, right?**

**[The victim]: Yes.**

Tr. 73-74, 83. No other testimony regarding battered spouse syndrome came into the record. Wilder claims that the mere fact that the State uttered the words "battered spouse syndrome" and "battered woman" without any explanation for the jury was overly prejudicial. We disagree.

{¶17} Battered spouse syndrome testimony is permissible when it is relevant to a claim of self-defense pursuant to R.C. 2901.06. In this case, the victim was not the defendant, but the State wished to use the syndrome to explain why the victim acted the way she did. This has been a permitted use in other cases. *See State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91. However, in this case, unlike in *Haines*, an expert was not permitted to testify. Additionally, other than the mere statement by the prosecuting attorney, the jury was not instructed on battered spouse syndrome and no argument was made by the State that indicated that the victim was a battered woman. Wilder did not move to have the statement made by the prosecuting attorney stricken. The statement was not testimony as it was made by the prosecuting attorney to the trial court. The

trial court correctly instructed the jury that the evidence was "all the testimony received from the witnesses, the exhibits admitted during the trial, and the facts agreed to by counsel." Tr. 213. Wilder has not put forth any support for his claim that five words stated by the prosecuting attorney were overly prejudicial. This is especially the case since no claim of battered spouse syndrome was made to the jury. The mere offhanded statement that is not evidence as was made in this case did not produce an overly prejudicial effect. Viewing the trial as whole, we do not find that Wilder was denied a fair trial by the State's one-time use of the words "battered spouse syndrome" and "battered woman". Therefore, the first assignment of error is overruled.

*Manifest Weight of the Evidence*

{¶18} Wilder claims in the second assignment of error that his conviction is against the manifest weight of the evidence. When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza*, 137 Ohio App.3d 336, 2000-Ohio-1689, 738 N.E.2d 822. *See, also, State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A new trial should be granted only in the exceptional case in which the

evidence weighs heavily against conviction. *Thompkins* at 387. Although the appellate court acts as a "thirteenth juror," due deference to the findings made by the fact-finder must still be given. *State v. Moorer*, 3d Dist. 13-12-22, 2013-Ohio-650, ¶ 29.

{¶19} A review of the testimony shows that the victim testified that Wilder physically harmed her, threatened to kill her, threatened to kill her children and other family members, and forced her to cooperate with sexual intercourse or be killed. Wilder argues that the victim's testimony was not credible because she had spent the morning with him, including time after the alleged domestic violence occurred, appeared to walk into the hotel room voluntarily, and did not run away or seek help when she had the opportunity to do so. However, when questioned about her actions, the victim explained why she acted in the manner she did. The explanation was not unreasonable. Viewing the evidence as a whole, this court does not find that the convictions weigh heavily against the evidence or that there was a manifest miscarriage of justice. The jury could reasonably have chosen to believe the testimony of the victim, especially given the testimony of the others regarding how the victim was acting after the alleged offense occurred. Therefore, the third assignment of error is overruled.

*Jury Instruction on Reverse Flight*

{¶20} In the fourth and final assignment of error, Wilder claims that the trial court erred by not including his proposed jury instruction regarding "Reverse

Flight". Wilder wanted the trial court to instruct the jury that he had a "consciousness of innocence" because he did not flee after committing the offense. "[I]t is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." *State v. Scott*, 26 Ohio St.3d 92, 101, 497 N.E.2d 55 (1986). A "criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence." *State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992). Trial court must be cautious in providing jury instructions that are not part of the Ohio Jury Instructions. *State v. Nadock*, 11th Dist. Lake No. 2009-L-042, 2010-Ohio-1161. The decision whether to give a requested jury instruction is within the sound discretion of the trial court. *State v. Bibler*, 3d Dist. Marion No. 9-01-19, 2001-Ohio-2289.

{¶21} Here, Wilder wished to modify O.J.I. CR 409.13, which permits the jury to consider that fleeing after the commission of an offense may be an indication of consciousness of guilt. The use of this instruction is optional. Wilder has presented no authority for the mandatory use of a "reverse flight" jury instruction. Since the jury instruction Wilder wishes to modify is optional, the logical inference would be that a modification of that instruction would also be optional. A review of the record as a whole does not indicate that the trial court abused its discretion in denying the request to instruct the jury as argued on appeal. Thus, the fourth assignment of error is overruled.

{¶22} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Van Wert County is affirmed.

***Judgment Affirmed***

**ROGERS, P.J. and PRESTON, J., concur.**

**/hls**