[Cite as *State v. Mayse*, 2017-Ohio-1483.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

       v.

RICHARD ALLEN MAYSE,

    DEFENDANT-APPELLANT.

CASE NO. 9-16-50

O P I N I O N

Appeal from Marion County Common Pleas Court
Trial Court No. 16-CR-165

**Judgment Affirmed**

Date of Decision:  April 24, 2017

APPEARANCES:

    *Robert C. Nemo* **for Appellant**

    *Kevin P. Collins* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Richard A. Mayse ("Mayse") brings this appeal from the judgment of the Court of Common Pleas of Marion County in which he was found guilty of one count of felonious assault. Mayse alleges on appeal that the trial court erred by denying his challenge of a juror for cause and denying his motion for a mistrial. Mayse also claims that he was denied the effective assistance of counsel and that the verdict was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} On March 20, 2016, an altercation occurred at the home of the victim. The victim was injured and taken to the hospital. The victim suffered from a laceration to her face and a broken nose which she claimed was caused by Mayse. An investigation followed. On April 7, 2016, the Marion County Grand Jury indicted Mayse on one count of Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. Doc. 1. Mayse entered a plea of not guilty. Doc. 6.

{¶3} On August 4 and 5, 2016, a jury trial was held. At the trial, the State presented evidence from five witnesses. The victim testified that after going out for her birthday, she went back to her home and people came over to hang out and play cards. Tr. 184-189. She was expecting more people to come over, so she went to ask Mayse to move his truck so people could park in the driveway. Tr. 193-94. Mayse was in the bathroom and they began arguing over whether he should move

the truck before or after he used the facilities. Tr. 194-95. According to the victim, Mayse then grabbed her phone, slammed it down, and broke it. Tr. 196. The victim was angry at Mayse, so she pushed him into the shower curtain. Tr. 196-97. Mayse then started to fall onto the side of the tub. Tr. 196-97. When Mayse got up, he was very angry and he punched the victim in the face. Tr. 197-98. The victim only recalled the first strike, but believed that she was struck multiple times based upon what she was told by others. Tr. 198, 204, 206. As a result of being struck, the victim's nose was broken, she needed stitches on her nose, and she was bruised. Tr. 199. The break required her to have surgery, which has left her with a scar, and caused a great deal of pain. Tr. 198-200. Additionally, the victim suffered severe head trauma, depression, and anxiety. Tr. 200-201.

{¶4} Robert Hummel ("Hummel") testified that while they were at the victim's house, the victim began yelling at Mayse to move his truck. Tr. 234. Mayse and the victim began arguing about when he was going to move the truck. Tr. 235. Eventually, Mayse became angry, picked up the victim's phone from the sink area, and slammed it down. Tr. 235. The victim then became angry and pushed Mayse into the shower curtain and Mayse slid down onto the side of the tub. Tr. 235-37. When Mayse got up, he looked angry and the victim began to back out of the bathroom. Tr. 237-38. Mayse then started punching the victim with his fist, striking her at least five times. Tr. 238-39. Hummel tried to intervene to stop Mayse, but Mayse just started hitting him instead and pushing him into the living

room. Tr. 239-40. As a result of Mayse's actions, Hummel suffered a broken nose, black eyes, and cuts to his face and head. Tr. 240. The broken nose resulted in a great deal of blood. Tr. 243. When Hummel went into the bathroom to wash off the blood, he saw the victim lying on the bed in the bedroom. Tr. 244. The victim had already left the house to go to the hospital by the time he walked out of the bathroom. Tr. 244.

{¶5} Patrolman Steve Luoma ("Luoma") of the Marion Police Department testified that he was dispatched to the hospital after the victim arrived there. Tr. 174. The victim claimed she was assaulted. At the hospital he spoke with the victim and noticed that there was swelling around her nose and eyes and that she had a deep laceration on the nose. Tr. 176-77. At the end of his shift, Luoma forwarded all he knew to the investigations department. Tr. 177.

{¶6} Dr. Joseph Minarchek ("Minarchek") is a plastic surgeon at Grant Medical Center in Columbus who specializes in reconstructive plastic surgery. Tr. 154. On March 20, 2016, the victim was brought in with an open facial fracture. Tr. 160. The CAT scan showed that the nose was broken. Tr. 161. The injuries required the doctor to surgically push the nose back into place and sew up the laceration. Tr. 163. Minarchek testified that as a result of her injuries, the victim will have a scar. Tr. 168. On cross-examination, Minarchek testified that the injuries of the victim would result in a large amount of bleeding. Tr. 169. He also

testified that he had no knowledge of what caused the injury and it could have multiple sources. Tr. 171.

{¶7} Detective Nick Esterline ("Esterline") of the Marion Police Department testified that he was the detective assigned to follow up on this case. Tr. 251-53. Esterline spoke to the victim while she was at the hospital and she indicated that Mayse was the one who struck her. Tr. 253-54. Esterline then walked through the crime scene and saw "quite a bit of blood, dried blood" in various locations in the home, including the bathroom, the hallway, the bedroom, the kitchen, and the living room. Tr. 254-60. Later, Esterline interviewed Hummel at the police station and took photographs of his injuries. Tr. 262. When Mayse was taken into custody later that day, the only injuries he had was one small cut to his hand. Tr. 263-64.

{¶8} Esterline then questioned Mayse. Mayse admitted that he had struck Hummel and indicated that the cut on his hand came from striking Hummel's glasses. Tr. 264. Mayse denied striking the victim, but admitted that he had pushed her. Tr. 264. According to Mayse, after he pushed the victim, Hummel yelled at him to keep his hands off of the victim, and a fight between the two of them ensued. Tr. 265. Mayse also told Esterline that the victim was injured when Hummel fell into her. Tr. 265. Mayse then indicated that he had immediately picked up the victim, took her outside, and put her in the car to be taken to the hospital. Tr. 266. When questioned about the blood in the bathroom and the bedroom, Mayse told Esterline that it must have come from the cut on his hand. Tr. 268. Esterline did

not believe that Mayse's version of the facts matched up with the physical evidence at the scene. Tr. 267.

{¶9} After the State rested, Mayse presented the testimony of Jennifer Lee Temple ("Temple"). Temple testified that earlier in the day, Mayse and the victim came over to her house to look at a truck that was for sale. Tr. 298. Later they all went out for the victim's birthday where Temple and the victim were drinking Long Island ice teas. Tr. 299. The victim eventually left, but the plan was for all of them to go to the victim's home. Tr. 299. When they arrived, the victim was standing outside yelling at them to leave. Tr. 299. They eventually went into the house to use the bathroom. Tr. 299. When Mayse went into the bathroom, the victim followed him and he pushed her out. Tr. 299. The victim then went into the bathroom again and he pushed her out a second time. Tr. 299. According to Temple, after the second push, Hummel swung his fist at Mayse, but failed to hit him. Tr. 300. Mayse then hit Hummel. Tr. 300. Eventually Hummel was pushed into the victim and his face struck her face. Tr. 300. When he stepped away, the victim was bleeding heavily. After being injured, the victim went into the bedroom and laid on the bed. Tr. 302. She also walked around the house while Mayse was trying to convince her to go to the hospital. Tr. 302, 321. The victim was yelling at them. Tr. 325. Eventually, Mayse picked up the victim and took her outside where other people had arrived. Tr. 325. 328. The victim left with other people to go to the hospital. Tr. 328. Temple testified that although she did not see what was

happening in the bathroom, there was no blood on the victim's face until after the collision with Hummel. Tr. 304. Temple also testified that Mayse had pushed the victim, but had never struck her. Tr. 303.

{¶10} At the conclusion of the testimony, the jury returned a verdict of guilty. Doc. 36. A sentencing hearing was held on September 29, 2016. Doc. 41. The trial court sentenced Mayse to a prison term of six years and ordered that the sentence be served consecutively to sentences imposed in two other cases. *Id.* On October 19, 2016, Mayse filed his notice of appeal. Doc. 45. On appeal, Mayse raises the following four assignments of error.

## First Assignment of Error

**The trial court erred in failing to grant [Mayse's] challenge for cause concerning a juror who admitted that if he was the defendant, he would not want himself as a juror.**

## Second Assignment of Error

**The trial court committed prejudicial error when it failed to grant [Mayse's] motion for mistrial after [the State] had failed to disclose the alleged victim's criminal record prior to her testimony.**

## Third Assignment of Error

**[Mayse] was denied his constitutional right of effective assistance of counsel.**

## Fourth Assignment of Error

**The jury's verdict was against the manifest weight of the evidence.**

*Challenge to Jurors*

**{¶11}** In the first assignment of error, Mayse claims that the trial court erred in denying his motion to have Juror Creps dismissed for stating that if he was a defendant, he would not want himself as a juror. During voir dire, Creps stated that his brother was a police officer in Marion and that his sister and brother-in-law were officers in Columbus. Tr. 24-25. Creps admitted that he would probably find testimony offered by law enforcement as credible, but stated that he "would probably know if what they're saying wasn't true." Tr. 25. When asked if he was the defendant, would he want himself as a juror, Creps answered "probably not." Tr. 50. Based upon these statements, Mayse challenged Creps for cause, but the trial court denied the challenge. Tr. 50-51. Creps was then dismissed pursuant to a peremptory challenge. Tr. 83. On appeal, Mayse argues that Creps should have been dismissed for cause and that Mayse should not have been forced to use a peremptory challenge to remove Creps from the jury.

**{¶12}** "[N]o juror need be disqualified for bias if the trial court, after examination of the juror, is satisfied that the juror can 'render an impartial verdict according to the law and the evidence submitted to the jury at the trial'." *State v. Wilder*, 3d Dist. Van Wert No. 15-15-08, 2016-Ohio-251, 58 N.E.3d 421, ¶ 13 quoting R.C. 2945.25(B). A trial court has broad discretion in the determination as to whether a juror can be impartial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 73.

> **When determining whether a denial of a challenge to a juror for cause is prejudicial error, the relevant inquiry is whether the jury panel as a whole was affected by the trial court's error.** *Gray v. Mississippi,* **481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). "[I]n order to state a constitutional violation in this situation, the defendant must use all of his peremptory challenges and demonstrate that one of the jurors seated was not impartial."** *State v. Broom*, **40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988). When a defendant exhausts his peremptory challenges before the full jury is seated, the erroneous denial of a challenge for cause may be prejudicial to the defendant.** *State v. Williams*, **79 Ohio St.3d 1, 679 N.E.2d 646 (1997). "The reason for this rule is that an error by the trial judge in overruling a challenge for cause forces the defendant to use a peremptory on a prospective juror who should have been excused for cause, giving the defendant fewer peremptories than the law provides."** *Id*. **at 8, 679 N.E.2d 646.**

*Wilder, supra* at ¶ 14.

{¶13} Here, Mayse used a peremptory challenge to excuse Creps from the jury pool. This was the first peremptory challenge used by the defense. Tr. 83. However, Mayse did not use all of his peremptory challenges. When asked if he wished to exercise his fourth peremptory challenge, counsel for Mayse indicated that they were satisfied with the panel and declined to excuse any more jurors. Tr. 122. Thus, Mayse had a peremptory challenge remaining. Since Mayse did not use all of his peremptory challenges, he has not shown that there was a constitutional violation by a denial of a challenge for cause. *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988). The first assignment of error is overruled.

*Motion for a Mistrial*

{¶14} In the second assignment of error, Mayse claims that the trial court erred in denying his motion for a mistrial after the State failed to disclose the victim's prior criminal record before she testified. "The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *State v. Treesh,* 90 Ohio St.3d, 460, 480, 2001-Ohio-4, 739 N.E.2d 749. A mistrial should not be granted merely due to some error or irregularity. *Id.* It should only be granted when a fair trial is no longer a possibility. *Id.* and *State v. Southam*, 3d Dist. Henry No. 7-12-04, 2012-Ohio-5943, ¶ 24. The "essential inquiry on a motion for a mistrial is whether the substantial rights of the accused were adversely or materially affected." *State v. Goerndt*, 8th Dist. Cuyahoga No. 88892, 2007-Ohio-4067 ¶ 21.

{¶15} The Criminal Rules require the State, upon the written demand for discovery by the defendant, to disclose the criminal records of a witness in the State's case-in-chief, if those convictions would be admissible under Evidence Rule 609. Crim.R. 16(B)(2). "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule * * * , the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1). If the State violates this rule, the trial court has the sound discretion to decide what sanction should be imposed. *Lakewood v Papadelis*, 32

Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987). The sanction imposed will not be overturned unless it was unreasonable, unconscionable, or arbitrary. *State v. Engle*, 166 Ohio App.3d 123, 2006-Ohio-1884, 850 N.E.2d 123, ¶ 7 (3d Dist.).

**{¶16}** The Ohio Supreme Court has previously held that "prosecutorial violations of Crim.R. 16 result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 131. In this case, there is no dispute that the State failed to disclose the criminal record of a witness as required by Criminal Rule 16. Tr. 289-90. Upon learning of the failure to disclose, Mayse requested that the trial court grant a mistrial. Tr. 289. The State informed the court that there was an error and that attempts had been made to recall the witness, but she had not responded. Tr. 290. The State then proposed a stipulation be read to the jury informing them that the witness had been convicted of a theft offense in 2016 and possession of cocaine in 2010. Tr. 290. The stipulation would also inform the jury that they could consider these crimes when weighing the credibility of the witness. Tr. 291. The trial court overruled the motion for a mistrial and agreed to inform the jury of the prior convictions. Tr. 293. The trial court then advised the jury as follows.

> **The second matter we need to advise you is that the Court wishes to instruct you that [the victim], who testified here yesterday, has been convicted of the offense of possession of cocaine in the year**

**2010; and further was also convicted of the offense of theft in February of 2016. This information that we're providing you may be used for the purpose of determining the credibility of [the victim]. This information may not be used for any other purposes.**

Tr. 296. A review of the record contains no evidence that the failure to disclose was willful.

{¶17} Second, the record does not show how this information would have aided the defense as it was not exculpatory. Mayse claims that this would possibly suggest that the victim was biased, thus implicating the Confrontation Clause as set forth in the Sixth Amendment to the United States Constitution. Mayse claims that this is error because the jurors did not get to see the victim's face when she was questioned about her criminal record. Bias is defined as a "mental inclination or tendency; prejudice; predilection." Black's Law Dictionary (10th Ed. 2014). However, the victim's criminal convictions at issue were not connected with the defendant and she was not given any consideration for her testimony. There is nothing in the record that would show that those convictions would show a prejudice against the defendant. Thus, they do not show a bias. Additionally, the criminal history of the victim was only admissible for the purpose of attacking her credibility. Evid.R. 609.

{¶18} Finally, even if it would have aided the defense, the defense suffered no prejudice as the trial court fully informed the jury about the victim's prior convictions. The statement made by the judge may have had more of an impact

than merely questioning the witness about the offenses because it drew more attention to the crimes and included a contemporaneous instruction that it could be considered for the purpose of determining the credibility of the victim. Since the jury was fully aware of the charges, there was no prejudice suffered. The failure to disclose is thus not reversible error and the trial court did not abuse its discretion in denying the motion for a mistrial. The second assignment of error is overruled.

*Manifest Weight of the Evidence*

{¶19} Although Mayse's third assignment of error argues that he was denied the effective assistance of counsel, we will address the fourth assignment of error first in the interest of clarity. In the fourth assignment of error, Mayse argues that his conviction was against the manifest weight of the evidence. "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 32 (4th Dist.).

> **Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."**

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 514 (1997) (citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

**{¶20}** *State v. Thompson*, 127 Ohio App.3d 511, 529, 713 N.E.2d 456 (8th Dist. 1998). "To that end, the fact finder is free to believe all, part or none of the testimony of each witness appearing before it." *State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 31 quoting *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716, 11AP-766, 2012-Ohio-2989, ¶ 38.

**{¶21}** Here, Mayse was charged with one count of felonious assault in violation of R.C. 2903.11(A)(1). The State was required to prove that Mayse knowingly caused serious physical harm to another. R. C. 2903.11(A)(1). Serious physical harm is defined as

> **(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;**

**(b) Any physical harm that carries a substantial risk of death;**

**(c) Any physical harm that involves some permanent incapacity whether partial or total, or that involves some temporary substantial incapacity;**

**(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;**

**(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.**

R.C. 2901.01(A)(5). The State presented the testimony of five witnesses. Minarchek testified as to the extent and seriousness of the injuries sustained by the victim. Minarchek indicated that her injuries required surgical intervention to repair the damage and that the victim would always have a scar as a result of the injuries. Luoma also testified to the injuries suffered by Mayse as he observed them soon after the incident. Mayse did not dispute that the victim suffered serious physical harm, but merely challenged that Mayse was the cause of the injuries. According to the testimony, of the victim and Hummel, Mayse purposely hit the victim multiple times with his fist. Both testified that as a result, the victim began bleeding profusely from her nose. The victim testified that her nose was broken, that she suffered a great deal of pain that was still continuing at the time of trial, and that she had a scar where the laceration to her nose had to be stitched closed. Even Mayse's witness, Temple, testified that the victim had been seriously harmed on the night in

question. Although Temple testified that the victim's injuries were not the result of Mayse striking her, the jury evidently did not believe her testimony. Esterline testified that the victim told him that Mayse was the person who struck her when he first interviewed her. Tr. 253-54. He also testified to the amount of blood he found at the scene and identified the photographs of the scene. Based upon his observations, the account of the incident provided by Mayse was not supported by the evidence. Mayse's account was also dissimilar from that of all of the other witnesses, including Temple. A review of the evidence does not indicate to this court that the jury lost its way. The evidence does not weigh heavily against conviction. Thus, the verdict is not against the manifest weight of the evidence and the fourth assignment of error is overruled.

*Effective Assistance of Counsel*

{¶22} Mayse claims in the third assignment of error that he was denied the effective assistance of counsel by 1) failing to seek the removal of two jurors for cause; 2) asking improper questions or failing to object to improper questions; 3) failing to introduce medical records; 4) asking about injuries sustained by witness other than the victim by Mayse's actions and failing to object to such questions; 5) failing to file a Motion in Limine or object to statements by Esterline that Mayse was on "probation"; and 6) failed to object to opinion evidence of Esterline.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and**

> **substantial justice was done."** *State v. Hester* **(1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."** *State v. Lytle* **(1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent.** *See Vaughn v. Maxwell* **(1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164;** *State v. Jackson***, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, ¶ 20. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "The prejudice inquiry, thus, focuses not only on outcome determination, but also on 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery*, ___ Ohio St.3d ___, 2016-Ohio-5487, ___ N.E.3d ___, ¶ 82 quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

**{¶23}** The first claim is that counsel failed to seek the removal of two jurors for cause. Mayse claims that counsel should have sought the removal for cause of Juror Krogman ("Krogman") and Juror Truitt ("Truitt"). Krogman stated that he was going to school for criminal justice, intended to become a police officer, and would be more likely to agree with the positions of the police. Tr. 76. However, he stated that he was not opinionated and wanted to hear all of the facts before making a decision. Tr. 76-77. He also indicated that the individual police officers are not always correct and that he felt he could fairly judge the case. Tr. 77-78. Krogman was not dismissed from the jury, even though Mayse still had a peremptory challenge left.

**{¶24}** The question before this court is whether counsel's failure to challenge for cause resulted in a substantial violation of counsel's duty to Mayse and whether the violation affected the outcome of the trial. Although the record does show that Krogman may have had a personal bias towards law enforcement, it also shows that he indicated that he could view the evidence fairly and follow the law. As discussed above, a juror need not be disqualified for bias if it is shown he or she can render an impartial verdict based on the law and the facts presented. "Counsel need not raise meritless issues or even all arguably meritorious issues." *State v. Jones*, 91 Ohio St.3d 335, 354, 2001-Ohio-57, 744 N.E.2d 1163. The record does not indicate that Krogman was incapable or even unlikely to render an impartial verdict. Thus, counsel for Mayse did not err in failing to challenge Krogman for cause.

**{¶25}** Truitt testified that he is the neighbor and a good friend with a police officer and that they vacation together. Tr. 84. He also indicated that he believed that there was no excuse for hitting a woman, no matter what. Tr. 85-86. Truitt admitted that although he would require the State to prove the case, he likely would not hold them to the "beyond a reasonable doubt" scale. Tr. 87. Mayse then used a peremptory challenge to remove Truitt from the panel. Here, there can be no prejudice from the alleged failure to challenge for cause. Truitt was not a part of the jury. In addition, Mayse still had an unused peremptory challenge at the end of voir dire. Thus, he could not have been prejudiced by the use of a peremptory challenge to remove Truitt from the panel. Without a showing of prejudice, no finding of ineffective assistance of counsel lies.

**{¶26}** The second ineffective assistance of counsel claim is based upon alleged improper questions of the victim asked by counsel and for failing to object to and move to strike statements made by the victim. This court has previously held that the "failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Stevens,* 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, 58 N.E.2d 584, ¶ 42 quoting *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144. "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994) quoting Jacobs, Ohio

Evidence (1989), at iii-iv (competent counsel may reasonably hesitate to object in the jury's presence). An appellate court may not use hindsight "to distort the assessment of what was reasonable" from the view of counsel at the time of the trial. *State v. Jones*, 2d Dist. Montgomery No. 26289, 2015-Ohio-4116, 43 N.E.2d 833, ¶ 55. A decision that may be debatable regarding the trial strategy of counsel may not form the basis for finding that counsel was ineffective. *Id.*

{¶27} Here, the statements at issue include the following. Mayse claims that his counsel was ineffective for not objecting when the victim testified that Mayse had a "really crazy look" in his eye before he hit her. Tr. 197. Mayse also claims that his counsel should have moved to strike the victim's testimony that she was hit multiple times since she testified that she could not remember anything after the first punch and was basing her statements on what others told her. Tr. 198-206. Additionally, the victim testified that she was told that she had sustained severe head trauma. Tr. 200. Mayse argues that these were not admissible as they were either overly prejudicial (the look in the eye) or hearsay (the remaining statements). A review of the record shows the first statement about the look in Mayse's eye was the victim's description of what she believed she saw. Witnesses are permitted to testify to what they observed and can describe it as they wish. Thus, any objection would likely have been overruled. The statement regarding the number of times she was struck as she was told by others may have been hearsay. However, such testimony would be cumulative as Hummel testified that Mayse struck the victim at

least five times. Tr. 239. Finally, the victim's statement that she was told she had severe head trauma was also cumulative. The jury only had to find that Mayse had caused serious physical harm to the victim. The victim, as well as the other witnesses, testified to the extent of her injuries. The jury was also shown pictures of the injuries from which they could independently determine the severity of the injuries. Thus, any testimony regarding the severe head trauma was not necessary to prove that the victim had suffered serious physical harm. Since the introduction of this evidence was not prejudicial, counsel was not ineffective for failing to object to it. Additionally, the decision not to object might have been a reasonable trial strategy as the objection would likely have drawn more attention to the statements.

{¶28} The third alleged mistake of counsel was the failure to have introduced the medical records from Marion General Hospital. Mayse claims that if the records had been admitted, it would have shown that the victim was intoxicated when she arrived at the hospital. A review of the record shows that the victim was questioned about being intoxicated. She admitted that she had been drinking that night. Tr. 186-87, 204. She also admitted on cross-examination that the hospital staff had to wait to do the surgery on her because of the alcohol in her system. Tr. 212. When questioned about her memory before being struck, the victim admitted that it was a "little fuzzy" because she had been drinking. Tr. 216. The fact that the victim had been drinking was also confirmed by both Hummel and Temple in their testimony. Tr. 230-31, 299. Given all of the undisputed evidence regarding the fact that the

victim had been drinking, the records showing that the victim had alcohol in her system when she was at the hospital were unnecessary. The jury had the information to consider from alternative sources. Thus, there was no prejudice from not admitting the medical records.

{¶29} Next, Mayse argues that counsel was ineffective for failing to object to the testimony of Hummel about Mayse striking him. A review of the record indicates that the defense was arguing, through the testimony of Temple, that the victim's injuries were the result of a fight between Hummel and Mayse and that Mayse pushed Hummel off of himself and Hummel fell into the victim, causing her injuries. During the opening statements, counsel for Mayse told the jury that "the fight actually broke out between [Hummel] and [Mayse] * * * [and the victim's] injuries were a result of this dumb, drunken, late-night scuffle between [Mayse] and [Hummel]". Tr. 152. Counsel went on to tell the jury that they did not deny the severity of the victim's injuries, but were only disputing the cause. Tr. 152-53. For Mayse's argument to have merit, he would have to show that there was an altercation between Hummel and Mayse. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2d Dist. Montgomery No. 26359, 2015-Ohio-2553, 43 N.E.3d 775, ¶56. Since this was the defense's theory of the case, the admission of the testimony of Hummel was part

of the trial strategy and does not form the basis of a claim for ineffective assistance of counsel.

**{¶30}** Mayse's fifth argument as to why his counsel was ineffective was that counsel failed to file a motion in limine or object to testimony that he was on "probation" at the time of the offense. A motion in limine is a precautionary ruling in anticipation of an evidentiary issue and is not final. *State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142 (1986). "It is counsel's duty to make his own appraisal of the case and to decide when such motions are worth filing." *State v. Giddens*, 3d Dist. Allen No. 1-02-52, 2002-Ohio-6148, ¶ 30. Similarly, as discussed above, the decision as to whether to object to a statement and further draw attention to it is a matter of trial strategy left to the discretion of trial counsel. Here, there were only two instances where Mayse's criminal history was mentioned. Esterline testified that "Major McDonald received a call that [Mayse] was there to meet with his probation officer, and we took him into custody at the office of his probation officer, went back to the police department and I spoke with him." Tr. 263. The second instance was when Temple testified that the officer who took her and Mayse "from his P.O.'s office" was supposed to write her statement down for her to sign because she did not have her glasses. Tr. 332. No other mention of this was made at any time. Although Mayse claims there was prejudice, he fails to show how he was prejudiced by these statements. There was a great deal of evidence that Mayse struck the victim in the face and that she suffered serious physical harm. Even if

the statements had been excluded, the record does not indicate that the outcome would have been different. Thus, the failure to object to the statements or to file a motion in limine does not constitute ineffective assistance of counsel in this case.

{¶31} Mayse's final claim of ineffective assistance of counsel is that counsel failed to object to opinion evidence of an unqualified police detective regarding blood analysis or blood splatter. A review of the record shows that Esterline testified that he had gone to the victim's home and taken pictures of the locations where blood was found. Tr. 254-260. Later when Esterline questioned Mayse about the incident, Mayse told Esterline that when Mayse saw that the victim was seriously injured, he picked her up to carry her to a vehicle to go to the hospital. Tr. 266. Mayse told Esterline that the victim was never in the bedroom and claimed that the blood in the bedroom and bathroom had come from a cut on his hand, which was very small. Tr. 268. Contrary to the assertion of Mayse in his brief, the testimony of Esterline was only to the locations and the amount of blood he found in the home. This testimony was available for the view of the jury through the photographs entered as exhibits. There was no need for training in blood analysis or blood splatter, because Esterline did not testify to those issues. Since there was no testimony which required expertise, counsel did not err in failing to object to the lack of expertise.

**{¶32}** Having reviewed all of Mayse's arguments regarding whether his counsel was ineffective, we do not find that any of trial counsel's actions constituted ineffective assistance of counsel. The third assignment of error is overruled.

**{¶33}** Having found no error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Marion County is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J, concur.**

**/hls**