[Cite as *State v. Spencer*, 2019-Ohio-3800.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 19CA6 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| THOMAS J. SPENCER, | : | |
| Defendant-Appellant. | : | **RELEASED: 09/11/2019** |

_____
APPEARANCES:

Jerry L. McHenry, Esq., Pickerington, Ohio, for appellant.

Judy C. Wolford, Pickaway County Prosecutor, and Justin B. Benedict, Assistant Pickaway County Prosecutor, Circleville, Ohio, for appellee.
_____
Hess, J.

{¶1} Thomas Spencer appeals his convictions for two counts of forgery in violation R.C. 2913.31(A)(3). Spencer contends that the trial court erred when it admitted unauthenticated surveillance footage and photographs that depicted him cashing checks and that trial counsel rendered ineffective assistance by not objecting to this evidence. However, the state introduced evidence sufficient to support a finding that the surveillance footage and photographs were what the state claimed. Thus, we conclude that the trial court did not err, let alone commit plain error, and counsel's failure to make a futile objection did not constitute ineffective assistance.

{¶2} Spencer also contends that the trial court violated his right to confrontation when it admitted hearsay evidence that the checks had been forged and that trial counsel rendered ineffective assistance by not objecting to this evidence. Even if we

presume error occurred, Spencer has not demonstrated a reasonable probability that it affected the outcome of the trial. Thus, he has not established plain error or ineffective assistance, and we affirm the trial court's judgment.

## I. FACTS

{¶3} The Pickaway County grand jury indicted Spencer on two counts of forgery and two counts of receiving stolen property, and he pleaded not guilty. At trial, Carol Smiley, Assistant Vice President of Accounting at The Savings Bank, testified that a customer notified the bank that checks had been paid on its account that the customer had not issued. The bank closed the account and contacted police.

{¶4} Detective Jon Farrelly of the Circleville Police Department testified that he received an email from Connie Campbell, a Savings Bank employee, about "false activity at the bank" and investigated the matter. Campbell gave him copies of two checks that appeared to be drawn on the account of Custom Maintenance Service, Inc., but had not been issued by the business. The checks were dated August 10, 2018, and the check numbers were sequential. Each check was payable to Spencer in the amount of $879.14. The back of the first check had a handwritten endorsement and printed information indicating a transaction had occurred on August 17, 2018, at 12:20:52 p.m. The back of the second check had a handwritten endorsement, a handwritten driver's license number, and printed information indicating a transaction had occurred on August 17, 2018, at 1:10:59 p.m. Detective Farrelly ran the driver's license number through OLEG and learned that it belonged to Spencer. Detective Farrelly also contacted Custom Maintenance, which did not recognize Spencer's name.

**{¶5}** Detective Farrelly testified that Campbell gave him surveillance footage from The Savings Bank branches in Ashville, Ohio, and Circleville, Ohio, along with still photographs made from the Circleville footage. The Ashville footage, dated August 17, 2018, depicts Spencer and another man entering the bank together. Spencer approaches a teller, endorses a check, gives it to the teller, and appears to put his driver's license on the counter. The teller begins to process the check through a device at 12:20:51 p.m. Later, Spencer puts his license away, and the teller gives him cash. The other man also cashes a check, and the men leave. The Ashville footage also depicts two women entering the bank together around 12:32 p.m., cashing checks, and leaving around 12:37 p.m. The Circleville footage, also dated August 17, 2018, depicts Spencer and the other man inside the bank together wearing the same clothing as in the Ashville footage. Spencer approaches a teller, endorses a check, and gives it to the teller along with his driver's license. The teller appears to write something, begins to process the check through a device at 1:11:14 p.m., and gives Spencer his license and cash. The other man also cashes a check.

**{¶6}** Sheila Sagraves testified that she had gone to school with Spencer. They later reconnected, and he asked if she "wanted to make a little bit of money cashing checks." She did and gave Spencer her "I.D. information." One day in August 2018, Sagraves, Jeremiah Palladino (her boyfriend), Spencer, and Michelle Fernan met with a man who went by the name "Black." They went to The Savings Bank in Ashville, where Black handed out pre-printed checks. Spencer and Palladino, who Sagraves identified as the other man in one of the photographs, went into the bank together. Sagraves and Fernan also went into the bank together. When they returned to the car, they gave the

money from the cashed checks to either Black or Spencer and got $100 each in return. The group then went to another Savings Bank location. Black did not threaten anyone and did not have a weapon. During trial, Sagraves examined one of the checks made payable to Spencer and testified that the checks she cashed were "exactly the same kind" except they listed her name and address. She also testified that she never worked for Custom Maintenance or thought that the checks were legitimate. Sagraves admitted that she participated in the scheme to get drug money, had pleaded guilty to criminal conduct in connection with these events, and hoped to get probation because of her testimony.

{¶7} Spencer testified that he and his wife, Fernan, agreed to perform work for a construction company whose name Spencer could not recall. They received their first paycheck on July 17, 2018, and two men from the construction company took them to cash it. The men told Spencer they needed to "hold the money," and because Spencer saw they had a gun, he gave the money to them. The men explained that they needed Spencer to cash checks from other companies for work that he was going to perform. Spencer claimed that he was forced to cash more checks for about a month.

{¶8} The trial court dismissed the receiving stolen property counts. The jury rejected Spencer's affirmative defense of duress and found him guilty on the forgery counts. The court sentenced Spencer to 12 months in prison on each forgery count and ordered him to serve those sentences consecutive to one another for an aggregate sentence of 24 months.

## II. ASSIGNMENTS OF ERROR

{¶9} Spencer assigns the following errors for our review:

1. The Appellant was denied his right to a fair trial, due process of law, his right to confront witnesses and equal protection of the law when Detective Farrelly and Bank Vice President Smiley testified as to hearsay evidence as to what another person(s) told them. This was in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sec. 10 of the Ohio Constitution.

2. Evidence of a videotape and still photographs from that tape, were not properly authenticated by the witness Detective Farrelly and were improperly admitted into evidence. As a result, the Appellant was denied his right to confront and cross-examine evidence designed to prove his guilt. He was denied his right to have only competent evidence adduced against him. He was denied a fair trial. This was a denial of his rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I[,] Section 10 of the Ohio Constitution.

3. Trial counsel rendered ineffective assistance of counsel to the Appellant, by failing to object to the evidence of the videotapes and the still photographs, and subsequently their admission into evidence. This was a denial of Appellant's rights to counsel, a fair trial, due process of law and equal protection of the law as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

For ease of discussion, we address the assignments of error out of order.

### III. LAW AND ANALYSIS

#### A. Authentication

**{¶10}** In the second assignment of error, Spencer contends that the trial court erred when it admitted the surveillance footage and photographs. He asserts that the state laid no foundation to establish the authenticity of this evidence, noting that Detective Farrelly did not operate the cameras at the banks or create the photographs from the surveillance footage. In the third assignment of error, Spencer contends in part that trial counsel rendered ineffective assistance by not objecting to the surveillance footage and photographs.

{¶11} Spencer essentially seeks plain error review in connection with his claim that the trial court erred. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "A silent defendant has the burden to satisfy the plain-error rule and a reviewing court may consult the whole record when considering the effect of any error on substantial rights." *State v. Davis*, 4th Dist. Highland No. 06CA21, 2007-Ohio-3944, ¶ 22, citing *United States v. Vonn*, 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

{¶12} "To establish plain error, a defendant must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial." *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 26. The defendant must "demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶13} To prevail on an ineffective assistance claim, a defendant must show: "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Failure to satisfy either part of the test is fatal to the claim. *See Strickland* at 697. The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.E. 83 (1955).

{¶14} "Before a trial court may admit evidence, Evid.R. 901 requires the proponent to identify or authenticate the evidence." *State v. Vermillion*, 4th Dist. Athens No. 15CA17, 2016-Ohio-1295, ¶ 13. Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Pyles*, 4th Dist. Scioto No. 17CA3790, 2018-Ohio-4034, ¶ 48. The proponent of the evidence need only show a reasonable likelihood of authenticity. *Id.* "Circumstantial, as well as direct, evidence may be used to show authenticity." *Vermillion* at ¶ 14.

{¶15} Two methods for authenticating photographic evidence are the pictorial testimony theory and the silent witness theory. *Midland Steel Prods. Co. v. Internatl. Union, United Auto., Aerospace & Agricultural Implement Workers of Am., Local 486*, 61 Ohio St.3d 121, 129-130, 573 N.E.2d 98 (1991). Under the pictorial evidence theory, " 'the photographic evidence is merely illustrative of a witness' testimony and it only

becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation.' " *Id.* at 129*, quoting *Fisher v. State*, 7 Ark.App. 1, 5, 643 S.W.2d 571 (1982). The state failed to establish admissibility pursuant to this theory because no witnesses testified that they saw Spencer cash the checks and that the surveillance footage and photographs were a fair and accurate representation of what occurred.

{¶16} Pursuant to the silent witness theory, " 'the photographic evidence is a "silent witness" which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness.' " *Id.* at 130, quoting *Fisher* at 6. The "photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence." *Id.* at paragraph three of the syllabus. Testimony from an individual with personal knowledge of the surveillance system's recording process is not required. *Vermillion* at ¶ 17, 20.

{¶17} The state satisfied the low threshold requirement for authentication under the silent witness theory. Detective Farrelly testified that he obtained the surveillance footage and photographs from a bank employee. The footage depicts tellers processing two checks for Spencer on the same date that appears in the transactional information printed on the back of the checks and at nearly the exact time. The teller in the Circleville footage appears to write something after Spencer gives the teller his check and driver's license, which is consistent with the fact that his driver's license number was handwritten on the check with a 1:10:59 p.m. transaction time. The surveillance footage is also consistent with Sagraves' testimony about the check cashing scheme. The Ashville footage depicts Spencer and Palladino entering the bank together and

cashing checks and two women entering together and cashing checks. The Circleville footage depicts Spencer and Palladino entering the bank to cash checks less than an hour later wearing the same clothing they wore in the Ashville bank. Under these circumstances, the trial court could reasonably determine that the surveillance systems were reliable and that the footage and photographs were what the state claimed.

{¶18} The trial court did not err when it admitted the footage and photographs, and counsel's failure to make a futile objection did not constitute deficient performance. *State v. Cordor*, 2012-Ohio-1995, 969 N.E.2d 787, ¶ 29 (4th Dist.). Accordingly, we overrule the second assignment of error, and we overrule the third assignment of error to the extent it asserts trial counsel rendered ineffective assistance in connection with the admission of the surveillance footage and photographs.

### B. Hearsay

{¶19} In the first assignment of error, Spencer contends the trial court violated his right to confrontation when it admitted hearsay evidence. Specifically, he asserts that Detective Farrelly and Smiley testified about statements others at The Savings Bank or Custom Maintenance made about the checks being forged without any showing by the state that the declarants were unavailable to testify. In the third assignment of error, Spencer argues in part that trial counsel rendered ineffective assistance by not objecting to this evidence. We set forth the standards for plain error review and ineffective assistance of counsel in Section III.A.

{¶20} Even if we presume error occurred, Spencer has not demonstrated a reasonable probability that it resulted in prejudice. Spencer asserts that without this evidence, he likely would have been entitled to a judgment of acquittal at the close of

the state's case.  Thus, he would not have testified and essentially incriminated himself by asserting the affirmative defense of duress.

**{¶21}** Spencer's argument is not well taken because even without the challenged evidence, the state still presented sufficient evidence to convict him, i.e., " 'viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  To convict Spencer of the forgery offenses, the state had to show that he uttered, i.e., issued, published, transferred, used, put or sent into circulation, delivered, or displayed, writings he knew to have been forged with purpose to defraud or knowing that he was facilitating a fraud.  R.C. 2913.31(A)(3); R.C. 2913.01(H).  The surveillance footage and checks show that Spencer uttered two writings.  Sagraves' testimony about how Spencer recruited her to cash forged checks similar to the ones Spencer cashed and the fact that Spencer cashed checks with the same date and dollar amount less than one hour apart at different bank locations is circumstantial evidence that he knew the checks were forged and acted with purpose to defraud or knowing he was facilitating a fraud.

**{¶22}** Accordingly, we overrule the first assignment of error, and we overrule the third assignment of error to the extent it asserts that trial counsel rendered ineffective assistance in connection with the admission of hearsay evidence.

## IV.  CONCLUSION

{¶23} Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
                Michael D. Hess, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**