[Cite as *State v. Vulgamore*, 2021-Ohio-3147.]

**Released 09/03/21**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA3686 |
| | : | |
| v. | : | |
| | : | |
| CARL S. VULGAMORE, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

Smith, P.J.

{¶1} Carl S. Vulgamore, ("Appellant"), appeals his convictions in the Ross County Court of Common Pleas. Appellant contends the trial court erred in denying his motion for new trial. Appellant also contends his trial counsel's performance was deficient, thereby rendering the ineffective assistance of counsel. Having fully reviewed the record, pertinent Ohio law, and the arguments of counsel, we find no merit to Appellant's arguments. Accordingly, we overrule Appellant's assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} In the summer of 2018, a Ross County Grand Jury returned a secret indictment against Appellant on four counts. The first, third, and fourth counts were gross sexual imposition, violations of R.C. 2907.05, felonies of the third degree. The second count was rape, R.C. 2907.02, a felony of the first degree. The counts specified that M.H., the alleged victim, was under the age of 13. The counts alleged conduct occurring during 2015-2017. Appellant is a retired Navy veteran and former neighbor and family friend of the victim.

{¶3} Appellant initially pled not guilty. Appellant subsequently entered written not guilty and not guilty by reason of insanity pleas pursuant to Rule 11(H). The trial court ordered a competency evaluation pursuant to R.C. 3947.37. Based upon the report of Dr. Kevin Edwards, a forensic psychologist at the Netcare Forensic Center, the trial court found Appellant to be able to understand the nature and objective of the proceedings pending against him, capable of assisting in his own defense, and therefore competent to stand trial.

{¶4} Appellant eventually proceeded to trial on May 29th and May 30th, 2019. While law enforcement officers, medical professionals, and M.H.'s mother Christy testified, there were no fact witnesses who observed the alleged criminal conduct. Both Appellant and M.H. testified at trial.

{¶5} M.H. testified she saw Appellant frequently because he often "hung out" with her father in the house or in the garage. M.H. described Count One as occurring in June 2015, just after her 10th birthday. M.H. was in the garage with Appellant and her cousin. When her cousin left, Appellant walked over to M.H., started asking her questions, and started rubbing her upper thigh. He briefly touched her vagina on the outside of her shorts. She pushed his hand away and went to the house.

{¶6} Between June 2015 and August 2017, M.H. avoided Appellant most of the time. Also, during this time, Appellant moved away. He returned, however, for regular visits and stayed with M.H.'s family.

{¶7} M.H. also described Count Two, the alleged rape offense occurring in August 2017. M.H. testified she was riding around her family's property on a golf cart with her cousin. Appellant got on the golf cart with them. Later, her cousin had to leave. M.H. was driving toward the home when Appellant told her to stop at a nearby trailer used only for storage.

{¶8} Appellant told her to stop because he had to show her something. M.H. testified she went inside the trailer with him. Appellant seemed to be "looking around." They were inside the trailer a few minutes. M.H. was about to leave but Appellant told her to stay. M.H. became scared. Appellant told her to sit down. M.H. was crying and nervous and her vision went black. When she

regained consciousness, she was naked and sitting on a vanity. Appellant was standing in front of her wearing only a shirt. His penis was inside her vagina.

{¶9} M.H. testified she looked down, started "freaking out." M.H. testified she "shoved him" away, dressed, and walked home. She felt mad and upset. When M.H. got home, her mother asked her what was wrong. M.H. did not tell anyone anything at that time because she was scared her dad would go to jail.

{¶10} M.H. described Count Three as occurring after a Halloween campout in October 2017. Appellant was spending the night with the family. Appellant came into her room. Appellant asked her how she was, put his hand inside her shorts, and briefly touched her vagina with his bare hand. M.H. testified she was uncomfortable and stopped him. Then Appellant took his hand and put her hand on his penis outside of his clothes. Appellant asked her if it "felt good." M.H. removed her hand and told him to get out of her room.

{¶11} Appellant left, but he came back later with two vibrators. He handed them to her and said "these are yours." M.H. identified the vibrators at trial. She testified she didn't want anyone to know about them and she wanted to throw them away, but she was also afraid she would get caught throwing them away. She hid them behind pictures in her room.

{¶12} M.H. testified she later told her friends Makyla and Gatten. She showed Gatten the vibrators and told him about the sexual acts that had occurred. M.H. asked him not to tell anyone.

{¶13} M.H. testified the final incident, subject of Count Four, occurred on Christmas Day 2017. Appellant was visiting and the family was opening presents. Later, M.H. walked to her room to put her gifts away. As Appellant walked out of the bathroom, they passed in the hallway and Appellant quickly grabbed her vagina on the outside of her clothes. M.H. described it as a "grab and go." Again, she did not tell anyone because she felt like she would get in trouble.

{¶14} M.H. and her mother Christy both testified they were visiting M.H.'s friend Makyla and Makyla's mother on December 29, 2017. While there, Christy received a phone call from Gatten's mother. When Christy got off the phone, she was upset. Christy asked M.H. if anything had happened with Appellant. M.H. told her "yes," and then she answered her mother's questions about the incidents.

{¶15} Appellant testified that he was 100% disabled and received a military pension. He was friends with M.H.'s family and spent lots of time helping her dad work on cars and cut trees. Appellant also babysat a disabled child in their extended family. Appellant testified he paid for the family's clothes and Christmas presents. Appellant testified he has post-traumatic stress issues, memory issues, and various physical health problems including a past heart attack and stroke.

Appellant testified he is sterile and is able to have sex by taking a blue pill which he gets from the VA. He gets 4 pills a month.

{¶16} Appellant denied being alone with M.H. in the garage in June 2015. The only time he visited M.H.'s family in August 2017 was August 1st. He denied being alone with M.H. in the trailer on that date. Appellant denied being alone with M.H. in her room around Halloween 2017. He denied giving M.H. vibrators. He thinks they were stolen from his truck. Appellant also denied being alone with M.H. on Christmas 2017. Appellant denied ever touching M.H., having sex with her, or attempting to have sex with her.

{¶17} On May 30th, 2019, a Ross County jury rendered guilty verdicts on all counts. Appellant subsequently discharged his trial counsel, retained a new attorney, and filed a motion for new trial. On July 12, 2019, the trial court conducted hearings on Appellant's motion for new trial, sexual classification, and sentencing. The trial court denied Appellant's motion for new trial. The trial court found Appellant a tier-three sex offender. The trial court imposed a combined prison sentence of 20 years to life.

{¶18} Appellant timely appealed. Where relevant, additional facts are set forth below.

## ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT COMMITTED PREJUDICIAL ERROR
       WHEN IT DENIED DEFENDANT'S NEW TRIAL MOTION.

II.    DEFENDANT WAS DENIED A FAIR TRIAL DUE TO HIS
       INEFFECTIVE COUNSEL.

ASSIGNMENT OF ERROR ONE - MOTION FOR NEW TRIAL

A. STANDARD OF REVIEW

{¶19} Appellant asserts that the trial court committed prejudicial error when it denied his motion for a new trial.  Crim.R. 33(A) provides that, "a new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:  (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; * * * " Crim.R. 33(E)(5) adds that a new trial may not be granted, verdict set aside, or judgment of conviction reversed for any cause "unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial." *Id.* *See State v. Sutton,* 8th Dist. Cuyahoga Nos. 108748, 108750, 2021-Ohio-854, at ¶ 53.  A motion for new trial pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court and will not be disturbed on appeal save an abuse of discretion.  *See State v. Roby*, 11th Dist. Ashtabula No. 2020-A-0024, 2020-Ohio-6817, at ¶ 12; *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus; *State v. Ward*, 4th Dist. Gallia No. 03CA2, 2003-Ohio-5650, at ¶ 20.  " 'An abuse of discretion occurs when a court's judgment is unreasonable,

arbitrary, or unconscionable.' " *State v. Wallace,* 4th Dist. Scioto No. 20CA3929, 2021-Ohio-1481, at ¶ 8, quoting *State v. D.D.F.,* 10th Dist. Franklin No. 20AP-10, 2020-Ohio-4663, ¶ 10, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## B. LEGAL ANALYSIS

{¶20} Crim.R. 33(B) provides in pertinent part that, "Application for a new trial shall be made by motion which, * * * shall be filed within fourteen days *after the verdict was rendered * * *.*" (Emphasis added.) In this case, Appellant contends that his motion for new trial was timely filed because "the verdict was 5/31/2019." Appellant points to the record which demonstrates he filed his motion for new trial and request for evidentiary hearing by fax filing, which is allowed by Ross County rules, on June 14, 2019. Although the clerk did not file stamp the original motion until June 17, 2019, Appellant concludes that his motion was filed timely and the trial court's denial based on untimeliness was in error.

{¶21} The State of Ohio responds that the verdict was rendered on Thursday, May 30, 2019. Appellant's motion was filed on Friday, June 14, 2019, on the 15th day after the verdict was rendered, thus making it untimely by one day. Furthermore, the motion was filed after the 4:00 close of business for the Ross County clerk's office. Pursuant to local rule, the motion was actually filed on the next business day, which was Monday, June 17, 2019, making the motion untimely

by three additional days. Finally, the State contends that even if the motion had been timely filed, its basis, the claim of ineffective assistance of counsel, had no merit and therefore the motion would not have been granted. For the reasons which follow, we agree with the State.

{¶22} We first discuss when the "verdicts were rendered" in this case. " 'Verdict' is defined as '1. A jury's finding or decision on the factual issues of a case. * * *.' " *State v. Lomax*, 96 Ohio St. 3d 318, 2002-Ohio-4453, 774 N.E.2d 249, at ¶ 23, quoting Black's Law Dictionary (7th Ed.Rev.1999) 1554. Black's Law Dictionary, Abridged Sixth Edition (1991), defines "render judgment" as follows:

> To pronounce, state, declare, or announce the judgment of the court in a given case * * *, and not synonymous with 'entering,' 'docketing,' or 'recording' the judgment. Judgment is 'rendered' when the decision is officially announced, either orally in open court or by memorandum filed with the clerk.

{¶23} Therefore, this means that judgment is rendered when a decision is officially announced in open court. The State correctly points out that the verdicts in this case were rendered May 30, 2019. The Ross County Court of Common Pleas docket reflects that the verdicts were rendered on May 30, 2019, and that they were filed on May 31, 2019. The verdict forms are also dated May 30, 2019.

{¶24} Appellant challenges reliance on Black's Law Dictionary to argue the word "render" is not synonymous with "docketing or recording."[1] Appellant directs our attention to R.C. 2945.78 which states that "When the verdict given is such as the court may receive it, it must be immediately entered in full upon the minutes." Furthermore, Crim.R. 55(A) places the responsibility of a clerk "then and there" to note it on the appearance docket. Appellant urges that because the clerk was one day late, he had the right to believe that his motion was timely despite the untimely file stamp.

{¶25} However, we observe that Crim.R. 55(A) provides in pertinent part that, "[T]he clerk shall chronologically note in the appearance docket all: process issued and returns, pleas and motions, papers filed in the action, orders, verdicts and judgments. The notations shall be brief but shall show the date of filing and the substance of each order, verdict and judgment." Our research has not yielded cases on this point, but we are guided by the principle that, " 'if a court rule is unambiguous, it is to be applied as written.' " *State v. Boaston*, 160 Ohio St. 3d, 2020-Ohio-1061, 153 N.E.3d 44, at ¶ 54, quoting *Erwin v. Bryan,* 125 Ohio St.3d 519, 2010-Ohio-2202, 929 N.E.2d 1019, ¶ 22. While the clerk has the responsibility to note the verdict on the docket, we have not found any language

---

[1] However, the Supreme Court of Ohio has at times consulted Black's Law Dictionary. *See, e.g., State v. Baker*, 119 Ohio St. 3d 197, 2008-Ohio-3330, 893 N.E.2d 163, at ¶ 11 citing *State v. Tuomala*, 104 Ohio St. 3d 93, 2004-Ohio-6239, 818 N.E.2d 272, at ¶ 14. (Exploring the meaning of the word "conviction.")

mandating, as Appellant mischaracterizes, that the verdict must be filed "then and there."

{¶26} The trial transcript demonstrates that on May 30, 2019, the second day of trial, the jury retired to deliberate at 2:35 p.m. The trial court stated on the record that the jury had reached verdicts and the transcript reflects they returned to the jury box at 4:13 p.m. At this time, the trial court received the verdict forms and read the verdicts. The jurors were thereafter polled, excused, and left the courtroom at 4:22 p.m. As indicated above, the clerk's office closes at 4:00 p.m. While filing the verdicts immediately would certainly be preferable, the clerk properly fulfilled the duty under Crim.R. 55(A) to note the verdicts on the docket the very next day. Therefore, we find no merit to Appellant's contention that the clerk was required to file the verdict on May 30, 2019.

{¶27} Appellant's motion, therefore, was clearly untimely. Crim.R. 45(A) provides:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the date of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not Saturday, Sunday, or legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in computation.

{¶28} In this case, the verdict was rendered in open court on May 30th, 2019. Beginning the count of days on May 31st, Appellant was required to file his motion for new trial on or before June 13, 2019. He filed it on June 14, 2019. It was untimely by one day.[2]

{¶29} We find no merit to Appellant's argument that the trial court abused its discretion by finding his motion for new trial to be untimely and denying the motion. Furthermore, as will be discussed below, had the trial court considered Appellant's motion, we would find the trial court did not abuse its discretion in denying the motion for lack of merit. Accordingly, the first assignment of error is hereby overruled.

ASSIGNMENT OF ERROR TWO - INEFFECTIVE
ASSISTANCE OF COUNSEL

A. STANDARD OF REVIEW

{¶30} To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See State v. Allen*, 4th Dist. Pickaway No. 19CA31, 2021-Ohio-648, at ¶ 21; *Strickland v. Washington,* 466 U.S. 668,

---

[2] We need not consider Appellant's further argument that his fax filing was within the provisions of the Ross County Local Rules.

686, 104 S. Ct. 2052 (1984). (Internal citations omitted.) " 'In employing this standard "we apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Day,* 4th Dist. Adams No. 19CA1085, 149 N.E.3d 122, 2019-Ohio-4816, ¶ 27, quoting *Strickland, supra.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland, supra.*

{¶31} Moreover, when addressing an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. *See State v. McKnight,* 4th Dist. Vinton No. 07CA665, 2008-Ohio-2435, at ¶ 70; *State v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995) (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." *Strickland* at 689. As the *Strickland* court stated, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy." *Id*. at 689.

## B. LEGAL ANALYSIS

1. Failure to choose mistrial.

{¶32} Appellant's trial counsel made a motion for mistrial based on an incident which occurred when the parties, attorneys, and witnesses were returning from lunch on the first day of trial. Appellant, in regular clothing and with a sheriff's deputy walking beside him, got off the elevator which opened into a lobby outside the courtroom. When they exited the elevator, M.H. and her mother, sitting nearby, saw them. M.H. began crying. Court staff directed M.H. and her mother to depart from the area. Several jurors observed some aspect of the incident.

{¶33} Appellant's counsel moved for a mistrial on two grounds. First, the jurors had seen Appellant, although in regular clothing, walking with the deputy. Counsel argued this caused prejudice due to the indication that his client was in the custody of the State of Ohio. Second, trial counsel argued M.H.'s response of crying prejudiced Appellant. Counsel argued that no curative instruction could undo the damage.

{¶34} The trial court denied the motion. The court offered to voir dire the jurors to find out what they had observed but commented that to do so might serve to "highlight" the incident in the jurors' minds. The trial court also offered a curative instruction. Faced with these options, trial counsel chose the instruction. The trial court then reminded the jurors that anything happening outside the

courtroom should be disregarded and they must decide the case on only what was seen and heard inside the courtroom.

{¶35} " 'Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.' " *State v. Godoy,* 9th Dist. Wayne No. 18AP0026, 2019-Ohio-4625, at ¶ 20, quoting *State v. Franklin,* 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Decisions regarding pursuit of a mistrial are considered to be trial strategy. *See Godoy, supra*. Counsel may very well determine that a curative instruction would draw more unwanted attention to the incident. *See State v. Moreland,* 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 74.

{¶36} Here, trial counsel chose not to have the jury questioned about the incident but did choose a curative instruction. We agree with the trial court's opinion that to have questioned the jurors about what they *may or may not have observed* may have highlighted the incident in their minds. We also note that the instruction took place after the lunch break, and we further note that the trial judge prefaced the instruction by saying, "I did want to refresh or resay one thing that I kind of hit on earlier, but we try to do this after long breaks and certainly after a day-long break." Placing the instruction at this point of the trial and prefacing the instruction as the court did likely caused the jurors to view it as part of the normal course of trial.

{¶37} Trial counsel was faced with a dilemma.  In this case, we view the decision not to voir dire the jurors as reasonable and effective trial strategy.  We do not find Appellant's counsel's performance to be deficient in this regard.

2. <u>Failure to file motion in limine and to object to the testimony of Dr. Luckeydoo.</u>

{¶38} A motion in limine is directed to the trial court's discretion on an evidentiary issue that might arise at trial but that has not yet been presented in full context.  *See State v. Shalash,* 2015-Ohio-3836, 41 N.E.3d 1263, at ¶ 30 (12th Dist.).  "It is counsel's duty to make his own appraisal of the case and to decide when such motions are worth filing."  *State v. Giddens,* 3d Dist. Allen No. 1-02-52, 2002-Ohio-6148, 2002 WL 31525379, ¶ 30.  Furthermore, trial counsel's failure to file a futile motion does not place his performance outside the range of reasonable professional assistance.  *State v. Wright,* 4th Dist. Scioto No. 01CA2781, 2002-Ohio-1462, at ¶ 57.

{¶39} Count Two of the indictment alleged sexual intercourse occurred in August 2017.  Dr. Luckeydoo testified that when she examined M.H. at the Child Protection Center in January 2018 she discovered a "V-shaped" defect in M.H.'s vagina, usually indicative of blunt force trauma.  Dr. Luckeydoo testified the blunt object could have been various items, including a penis.  Dr. Luckeydoo did not put an age on the defect.

{¶40} Appellant contends that trial counsel should have filed a motion in limine to exclude this evidence.  We find this argument without merit.  Dr. Luckeydoo was declared an expert in pediatric medicine.  The testimony cited above described the injury she saw when examining M.H. for the purpose of medical diagnosis.  If Appellant had filed a motion to exclude the above testimony, the motion would likely have been overruled, making counsel's act futile.  As previously observed, trial counsel's failure to file a futile motion does not indicate deficient performance.

{¶41} Appellant also claims trial counsel was ineffective for failing to object to Dr. Luckeydoo's testimony about what M.H. told her about "all of the incidents." Appellant claims this is an "improperly admitted prior consistent statement" which bolstered M.H.'s credibility.  We again disagree.

{¶42} " '[F]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.  To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness.' " *State v. Johnson*, 112 Ohio St. 3d 21-2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 139, quoting *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988).  The decision as to whether to object to a statement and further draw attention to it is a matter of trial strategy left to the discretion of

trial counsel. *See State v. Mayse*, 2017-Ohio-1483, 88 N.E.3d 1209, at ¶ 30 (3rd Dist.).

{¶43} Dr. Luckeydoo testified that prior to conducting physical examinations in cases of alleged sexual abuse, she tries to obtain information on patients' social history and sexual history. She asks them to describe what happened. Dr. Luckeydoo's testimony regarding what M.H. told her is hearsay.

{¶44} Hearsay is inadmissible at trial, unless it falls under an exception to the Rules of Evidence. Evid.R. 802. Evid.R. 803(4) contains exceptions to the rule against the admission of hearsay statements and permits the introduction of statements made for purposes of medical diagnosis or treatment. Evid.R. 803(4) provides for the admissibility of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The hearsay rules except statements made for the purpose of medical diagnosis or treatment due to the inherent reliability underlying the nature of those statements. Courts have consistently found that a description of the encounter and identification of the perpetrator are within [the] scope of statements for medical treatment and diagnosis. *See State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, at ¶ 98 (Internal citations omitted.).

{¶45} Dr. Luckeydoo obtained information from M.H. for the purpose of medical diagnosis. Had counsel objected at trial, the objection would likely have been overruled. Therefore, we cannot conclude that counsel's performance was deficient for failing to make a very likely futile objection. *See State v. Spencer,* 4th Dist. Pickaway No. 19CA6, 2019-Ohio-3800, at ¶ 18.

3. Failure to effectively cross-examine Dr. Luckeydoo.

{¶46} Appellant argues that trial counsel failed to effectively cross-examine Dr. Luckeydoo in regard to the cause of the defect in M.H.'s vagina. Appellant suggests trial counsel should have asked Dr. Luckeydoo, "Did the victim admit that she used a dildo?"

{¶47} "Generally, '[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.' " *State v. Guysinger,* 4th Dist. Ross No. 15CA3514, 2017-Ohio-1167, at ¶ 17, quoting *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 146. Moreover, " '[a]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v. Dorsey,* 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 22, quoting *In re Brooks*, 10th Dist. Franklin No.

04AP164, 2004-Ohio-3887, ¶ 40; *see also State v. Allah,* 4th Dist. Gallia No.

14CA12, 2015-Ohio-5060, ¶ 23.

{¶48} To support his claim that trial counsel should have asked Dr.

Luckeydoo the above question, Appellant argues verbatim as follows:

> [M.H.] stated that she never used either of the dildos but she admitted that she kept them.  Dr. Luckeydoo, as part of her questioning, should have asked what the cause of the trauma was and she did not.  Had she gotten [M.H.] to confess that she used the dildos, it would have been a major impeachment.  That thought was not even brought up by counsel as counsel did not inquire of Dr. Luckeydoo why she did not ask that question.

{¶49} In this case, Dr. Luckeydoo interviewed and examined M.H. at the

Child Protection Center.  Dr. Luckeydoo's purpose in interviewing M.H. was to

diagnose her injuries relating to allegations of sexual abuse.  Appellant believes

Dr. Luckeydoo should have asked M.H. during the interview if she used dildos.

Appellant also believes his counsel's asking Dr. Luckeydoo at trial:  "Why did you

*not* ask M.H. if she used dildos" would have been helpful to his cause.

{¶50} We find counsel's decision to not ask this question to have been

reasonable trial strategy.  Such a question could have caused the jury to see counsel

as attacking the victim.  Moreover, even if such a question would have been asked,

an answer indicating M.H. had used them would not have exculpated Appellant in

the allegations made against him.  We do not find trial counsel's performance

deficient due to his failure to ask the above-referenced question.

4.  <u>Failure to interview and call Gatten as a witness.</u>

{¶51} Appellant argues trial counsel failed to interview M.H.'s friend Gatten, and call Gatten as a witness. M.H. testified she told Gatten Appellant had engaged in sexual activity with her and had given her the vibrators. Appellant acknowledges that "exactly what was said is unknown." Generally speaking, " '[C]ounsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.' " *McKnight, supra,* at ¶ 73, quoting *State v. Treesh,* 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). *See also State v. Hanna*, 95 Ohio St.3d 285, 767 N.E.2d 678, 2002-Ohio-2221; *State v. Williams,* 99 Ohio St.3d 493, 794 N.E.2d 27, 2003-Ohio-4396.

{¶52} M.H. testified that after the third incident, in October 2017, Appellant told her friends Makyla and Gatten. M.H. showed Gatten the vibrators and told him about the acts that occurred. When Christy testified, she indicated Gatten's mother was in jail, and Gatten's whereabouts were unknown.

{¶53} We find no support to conclude that trial counsel was deficient for failing to interview and call Gatten. Obviously, Gatten was unavailable at the time of trial. It is also possible that had Gatten been found and interviewed, his testimony would have not been favorable to Appellant and would have possibly bolstered M.H.'s credibility. Most importantly, given that Appellant admits that the substance of any testimony from Gatten was unknown, such speculation will

not support a finding of deficient performance. *See State v. Short,* 129 Ohio St. 3d 360, 2011-Ohio-3641, 952 N.E.2d 1121; *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 217, citing *State v. Were,* 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 219, and *State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 121.

    5. <u>Failure to impeach victim.</u>

{¶54} Appellant argues counsel was ineffective for failing to impeach M.H. with inconsistencies in her testimony regarding a golf cart and the time frame of the events.[3] Trial counsel requested M.H.'s statement be played for her to refresh her memory. After that occurred, M.H. testified and admitted that she mistakenly told the officer the most recent incident happened around Christmas on the golf cart. M.H. admitted the inconsistencies in her statement. Appellant claims that trial counsel did not obtain a transcript of M.H.'s statement to the authorities, which would have allowed him to control the testimony.

{¶55} We have reviewed the trial transcript in full and find that Appellant's trial counsel conducted an effective cross-examination of M.H. Defense counsel was able to elicit the inconsistency between what M.H. initially reported to the officer about the time and location of the incidents, and the substance of her

---

[3]Appellant also indicates counsel was ineffective for failing to impeach M.H. about her black-outs. However, in his brief he fails to develop this argument.

testimony at trial. While we consider the golf cart's functionality immaterial to Appellant's guilt, trial counsel was able to point out the inconsistency here.

{¶56} More importantly, counsel elicited cross-examination testimony from M.H. admitting that despite the prior incident of unwanted sexual conduct, M.H. stopped the golf cart on Appellant's instruction and went into the trailer alone with him. Counsel was able to emphasize that M.H. claimed she was afraid of what her father would do if he found out, yet she told her friends about the alleged sexual abuse. Trial counsel was able to disparage M.H.'s testimony that she pushed Appellant off her, by pointing out Appellant's much larger size and stature.

{¶57} In addition, trial counsel elicited testimony from M.H. which was favorable to his client. M.H. acknowledged that Appellant was a family friend who babysat for them. M.H. also admitted that prior to the allegations subject of trial, Appellant had not done anything inappropriate.

{¶58} Finally, in light of the sensitive nature of the case involving a child victim of sexual assault under the age of 13, trial counsel's decision not to conduct a more aggressive cross-examination of M.H. does not, by itself, constitute ineffective assistance of trial counsel. Trial counsel could have been wary about a contentious cross-examination of M.H. who had the prior emotional response to seeing Appellant exit the elevator after lunch break. A more rigorous cross-examination could evoke more emotion and greater sympathy by the jury. *See,*

*e.g., Guysinger, supra,* at ¶ 30 (Internal citations omitted.)  " 'Ineffective assistance has been found when counsel needlessly introduced damaging testimony during cross-examination.' "  *State v. Mendez,* 8th Dist. Cuyahoga No. 108527, 2020-Ohio-3031, at ¶ 39, *quoting State v. Beasley,* 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 157.

{¶59} Based on our review, we find nothing in the record to support Appellant's claim that his trial counsel's cross-examination of M.H. was deficient.

6.  Failure to object to improper vouching.

{¶60} Appellant contends that trial counsel was ineffective when he did not object to Deputy Winfield's testimony that he believed Appellant was not being honest with him.  Deputy Winfield testified he confronted Appellant with the vibrators and Appellant claimed he had never seen them before.  Because Appellant did not raise this specific objection during the trial court proceedings, he forfeited all but plain error.  *See State v. Lawson,* 4th Dist. Highland No. 14CA5, 2015-Ohio-189, at ¶ 15; *State v. Knott,* 4th Dist. Athens No. 03CA30, 2004-Ohio-5745, ¶ 9, citing Evid.R. 103(A)(1) ("Because counsel's objection did not apprise the court of this specific argument, we believe a plain error analysis of the issue is appropriate"), *see also* Painter and Pollis, Ohio Appellate Practice, § 1:34 (2014).

{¶61} Appellate courts take notice of plain error " ' "with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of

justice.' ' " *Lawson, supra,* at ¶ 15, *quoting State v. Mammone,* 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 69, *quoting State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. To prevail, Appellant must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *See Mammone* at ¶ 69, citing *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *see also State v. Bethel,* 4th Dist. Jackson No. 13CA11, 2014-Ohio-3861, ¶ 11. It is well-settled that neither lay nor expert witnesses are permitted to testify about the veracity of another witness. *See Lawson, supra,* at ¶ 17; *State v. Pawlak,* 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 113 ("lay witnesses are prohibited from testifying as to another witness's veracity") (Internal citations omitted.)

{¶62} In this case, Deputy Winfield took Defendant's statement which was played to the jury. Therein, Appellant denied, several times, purchasing the vibrators, despite Deputy Winfield's statement that he would obtain surveillance video to verify Appellant's statement. The State offered receipts into evidence demonstrating that Appellant purchased the vibrators. Appellant also admitted at trial he had purchased them.

{¶63} An obvious conclusion the jury could draw was that Appellant initially lied to Deputy Winfield. Furthermore, counsel likely wished to downplay the comment and objecting would have called more attention to it. We find any

error in failing to object to the Deputy's comment regarding Appellant's untruthfulness certainly did not rise to the level of plain error. Therefore, we do not find trial counsel's performance was deficient in this regard.

      7. <u>Failure to deliver an effective opening statement.</u>

{¶64} Appellant contends that his trial counsel was ineffective in delivering the opening statement because he failed to inform the jury of the exculpatory facts to be looking for. We disagree. First of all, the record does not reveal exculpatory facts, only Appellant's denials or inconsistencies in M.H.'s testimony. In trial counsel's opening statement, counsel generally directed the jury to scrutinize the details of M.H.'s testimony for inconsistencies.

{¶65} " ' Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time.' " *State v. McKenzie,* 4th Dist. Scioto No. 19CA3892, 2021-Ohio-536, at ¶ 22, quoting *State v. Cook,* 65 Ohio St. 3d 516,525, 605 N.E.2d 70 (1992), citing *Strickland, supra,* at 687-689, 104 S.Ct. at 2064-2066. Here, there was no way for trial counsel to know M.H. would testify inconsistently regarding where the Christmas incident happened. Trial counsel would not have known that M. H. would testify that the golf cart sometimes stalled.

{¶66} In light of the entire opening statement, we cannot conclude that this omission supports a conclusion that counsel's performance was deficient.

Trial counsel stressed there would be inconsistencies in the testimonies of the officers, medical examiners, and M.H. Defense counsel emphasized the State's burden of proof. And, trial counsel portrayed Appellant as a family friend who was completely blindsided by the accusations. We find no merit to Appellant's argument that trial counsel failed to deliver an effective opening statement.

8. Failure to call witness Minott.

{¶67} According to Appellant's brief, Megan Minott worked at the Lion's Den as a massage therapist and worked on the side as a prostitute. Appellant was her customer. Appellant contends that counsel was ineffective when he failed to call her as a defense witness to testify to crucial evidence of Appellant's impotency and specific evidence of his sexual proclivity. We disagree.

{¶68} First, Appellant's argument hereunder relies on facts not in the record. Second, we fail to see how this evidence places Appellant in favorable light. Having the sex toys for his own use does not preclude Appellant from giving them to M.H., possibly for the purpose of grooming her for further sexual activity. Furthermore, Appellant testified he was able to have sexual intercourse with the use of medication obtained from the VA. Minotts' testimony would have demonstrated only that Appellant also engaged in sex acts different from those he allegedly engaged in with M.H., not that he was unable to perform the ones

described by M.H.  We do not even view the failure to call this witness as a debatable trial strategy, but evidence of sound performance of trial counsel.

    9.   Failure to obtain medical records.

{¶69} Appellant contends that his counsel was ineffective for failing to obtain his medical records from the VA, records which would conclusively establish his impotence.  However, Appellant also testified that he was prescribed medication from the VA which allowed him to have sexual intercourse under certain conditions.  Presumably, the medical records would have served only to verify Appellant's testimony.  In our view, the medical records would have added nothing to Appellant's defense and would have simply been cumulative, unnecessary evidence on the issue of his ability to perform sexually.  Moreover, the documentary evidence may have served to emphasize that Appellant can have sexual intercourse under certain conditions.  Appellant's counsel was not deficient for failing to obtain and utilize Appellant's VA medical records.

    10. Failure to file alibi.

{¶70} Appellant contends that his trial counsel was ineffective for not filing a notice of alibi in regard to the August 2017 alleged rape incident.  In Appellant's motion for new trial, he alleges that:

> The date and time of each alleged sexual encounter with the minor victim was set forth in the bill of particulars * * *. Defendant states he was in Genesis Hospital in Zanesville, for a pierced bowel on one of the dates alleged.  An alibi was not

filed and the hospital records in support were not introduced into evidence. * * * Due to Defendant's VA disability, he had an in-home VA nurse visiting daily who, upon proper cross-examination of the victim, could have impeached the fact that Defendant had no access to the victim during those hours.

{¶71} The problem with Appellant's assertion is that it relies on evidence not in this record. Appellant has not provided the dates he was allegedly in the hospital in August 2017. He has not provided evidence from the in-home VA nurse establishing the dates she visited him in August 2017.

{¶72} In *State v. Royster,* 2d Dist. Montgomery No. 26378, 2015-Ohio-625, the defendant claimed his counsel was ineffective for failing to investigate his alibi that he was residing at a homeless shelter during the time frame that rape offenses allegedly occurred. In postconviction proceedings, Royster submitted documentation from the shelter indicating that he was residing there during a portion of the pertinent time period. Royster stated in an affidavit that he had a discussion with his counsel regarding the dates of the alleged offenses and his alibi.

{¶73} The district court observed:

[E]ven if we were to assume counsel's performance was deficient with respect to investigating Royster's alibi, Royster has failed to establish that any further investigation would have changed the outcome of his case. As previously noted, he was indicted for committing the rape offenses sometime between August 1, 2010 and April 30, 2011. While he established an alibi between July 16, 2010 and October 12, 2010, there is still a six-month window of time in which the offenses could have

occurred as alleged. There was also testimony presented at trial indicating that the offenses were committed within the alleged time frame. As the trial court indicated, Royster is not alleging that he was at the homeless shelter during the entire period between August 1, 2010 and April 30, 2011. Therefore, we agree with the trial court's finding that the homeless shelter evidence is immaterial to the outcome.

*Id.* at ¶ 37. *See also*, *State v. Mallory,* 2d Dist. Montgomery No. 16543, 1998 WL 380502, at *2 (July 10, 1998), (Defendant could not demonstrate, from the record, that he had a viable alibi defense to present, and without such a demonstration, could not show that his trial counsel's failure to develop an alibi defense prejudiced him.)

{¶74} In this case, the rape was alleged to have occurred sometime between August 1st and August 31st, 2017. Appellant testified that he was only at M.H.'s home to visit the family on August 1st, the beginning of the month. M.H. testified although Appellant had moved away, he still visited the family "[e]ither every other weekend or every weekend." Appellant's claims of being hospitalized or being at home with his home care nurse are not supported by the record and are only speculation. Even if he had been able to provide documentation of some dates, this evidence would likely not have provided an alibi for every remaining day of the month.

{¶75} Furthermore, in *State v. Jones,* 8th Dist. Cuyahoga No. 63836, 1993 WL 389457, at *7 (Sept. 30, 1993), the court stated that the "[e]xclusion of alibi

evidence is not always a violation of an essential duty." " 'Reviewing courts have drawn a clear line between failure to subpoena critical witnesses and failure to call such witnesses to the witness stand to testify during trial." ' *State v. Rudge,*11th Dist. Portage No. 95-P-0055, 1996 WL 761161 at *13 (Dec. 20, 1996), quoting *Jones, supra.* The 11th District found that based on the lack of proof concerning the content of the proposed alibi testimony (viewed in conjunction with the explicitly stated tactical motive for not calling the alibi witnesses at trial), it could not say that the decision was prejudicial to appellant.

{¶76} Appellant has provided no documentation of the dates of his hospitalization. He has provided no description of the VA nurse's supposed favorable testimony. He relies solely on speculation that this evidence would have supported an alibi. Based on this record, we cannot find counsel deficient for failing to file a notice of alibi.

11. Failure to object to improper polling.

{¶77} Appellant contends that the proper question to ask a juror when polling is, "You are required to attest as you presently sit here that the jury verdict signed by you in the jury room is still your verdict. Do you so attest that it is your verdict at this time?" The trial court addressed each juror as follows: "Is this your signature on these verdict forms?" Thereafter, the trial court followed up with, "Is this your verdict?" Although acknowledging that R.C. 2945.77 and Crim.R. 31(D)

do not provide the manner in which the verdict inquiry is to be made, Appellant claims his counsel was ineffective for failing to object to the polling as it was conducted in this case.  We disagree.

{¶78} R.C. 2945.77 provides as follows:

When the jurors agree upon their verdict, they must be conducted into court by the officer having them in charge. Before the verdict is accepted, the jury may be polled at the request of either the prosecuting attorney or the defendant. If one of the jurors upon being polled declare[s] that said verdict is not his verdict, the jury must further deliberate upon the case.

{¶79} Crim.R. 31(D) provides as follows:

When a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged.

{¶80} Neither the statute nor the rules of criminal procedure specify how the poll is to be conducted.  *See State v. Villani,* 12th Dist. Butler No. 2019-Ohio-1831, at ¶ 40.  In *Villani,* one of the verdict forms was missing a signature.  The trial court asked the jury if their verdict was unanimous and returned the form to the juror for signature.  Villani argued on appeal that counsel was ineffective for failing to request a jury poll when the error was discovered.  The *Villani* court looked to our older decision in *State v. Heyward,* 4th Dist. Pickaway No. 96CA42, 1998 WL 290238, *11-12 (May 18, 1998), wherein we held that individually polling the jurors is not required.  We observed:

> While individually polling the members of the jury would certainly be the better practice under R.C. 2945.77 and Crim.R. 31(D), an individual poll is not required. * * * In the instant case, the jury was polled, albeit as a group, and all of the members indicated that the verdict was his or her verdict. Notwithstanding our belief that a poll of each individual member of the jury would have been the better practice, we find that Heyward was afforded his fundamental right to meet the jury face to face and to demand of the jurors their verdict. *See State v. Redding,* 8th Dist. Cuyahoga No. 59972, 1992 WL 41845, (Mar. 5, 1992),

*Heyward, supra,* at *12.

{¶81} Given that the paramount importance of the jury poll is to afford a defendant the fundamental right to meet the jury face to face and demand their verdict, we do not find Appellant's trial counsel was deficient for failing to object to the manner in which the jury poll was conducted. And, assuming arguendo that the omission could have been found deficient performance, we would fail to see how the outcome of the trial would have changed.

{¶82} Based on the foregoing, we find no merit to Appellant's arguments that his counsel's performance was deficient or that he was prejudiced by counsel's performance at trial. We find no merit to Appellant's ineffective assistance of counsel claims. Accordingly, the second assignment of error is hereby overruled.

{¶83} Having found no merit to either of Appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**