[Cite as *State v. Thompson*, 2025-Ohio-3022.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

DEXTER L. THOMPSON,

    DEFENDANT-APPELLANT.

CASE NO. 1-24-51

OPINION AND
JUDGMENT ENTRY

Appeal from Allen County Common Pleas Court
Trial Court No. CR2023 0209

Judgment Affirmed

Date of Decision:  August 25, 2025

APPEARANCES:

    *Allison F. Hibbard* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Dexter L. Thompson ("Thompson"), appeals the August 8, 2024 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from allegations that Thompson, a probation officer at the Lima Municipal Court, engaged in improper sexual conduct with three of his probationers—S.P., J.H., and C.S.[1] Relevantly, the investigation in this case began after another probationer reported the alleged conduct between Thompson and S.P. to a different probation officer. As a result, the case was referred to the Lima Police Department, and a subsequent investigation identified J.H. and C.S. as additional alleged victims. In particular, it was alleged that Thompson (1) engaged in sexual conduct with S.P. on two separate occasions, once at the probation office and a second time at S.P.'s home; (2) kissed J.H. during a meeting, then grabbed her hand and moved it to his pants; and (3) exposed his penis to C.S. while he was her probation officer.

{¶3} On July 13, 2023, the Allen County Grand Jury indicted Thompson on seven counts: Counts One and Three of sexual battery in violation of R.C. 2907.03(A)(1), (B), third-degree felonies; Counts Two and Four of sexual battery

---

[1] While this appeal pertains to three victims, charges related to a fourth victim were also filed against Thompson but were later dismissed and are not at issue in this appeal.

in violation of R.C. 2907.03(A)(6), (B), third-degree felonies; Count Five of gross sexual imposition in violation of R.C. 2907.05(A)(1), (C)(1), a fourth-degree felony; and Counts Six and Seven of public indecency in violation of R.C. 2907.09(A)(1), (C)(2), fourth-degree misdemeanors.  Thompson filed written pleas of not guilty to the charges in the indictment.

{¶4} On November 6, 2023, Thompson filed a motion to suppress evidence. The State filed a memorandum in opposition to Thompson's suppression motion on November 20, 2023 and Thompson filed his reply on November 29, 2023. Following a hearing on December 1, 2023, the trial court denied Thompson's motion.

{¶5} On January 11, 2024, under a superseding indictment, the Allen County Grand Jury indicted Thompson on three additional counts:  Counts Eight, Nine, and Ten of sexual imposition in violation of R.C. 2907.06(A)(1), (C), third-degree misdemeanors.  On January 17, 2024, Thompson appeared for arraignment and pleaded not guilty to the superseding indictment.  After the trial court denied the State's motion to continue trial due to the unavailability of the fourth victim, the trial court granted the State's motion to sever Counts Eight, Nine, and Ten on June 24, 2024.

{¶6} On June 27, 2024, Thompson filed motions in limine requesting that the trial court determine that evidence regarding the detective's investigative methods and his own prior medical records would be admissible at trial.

Case No. 1-24-51

{¶7} The case proceeded to a jury trial on June 25-28, 2024 on Counts One through Seven.[2] On June 28, 2024, the jury found Thompson guilty of Counts One through Five but not guilty of Counts Six and Seven.[3]

{¶8} On August 8, 2024, the trial court sentenced Thompson to 36 months in prison as to Counts Two and Four, respectively, and to 18 months in prison as to Count Five. The trial court further ordered that Thompson serve the terms consecutively for an aggregate sentence of 7 1/2 years in prison. The trial court also classified Thompson as a Tier III sex offender.

{¶9} Thompson filed his notice of appeal on August 14, 2024. He raises four assignments of error for our review. For ease of our discussion, we will begin by discussing Thompson's second and third assignments of error together, followed by his first assignment of error.

### Second Assignment of Error

**Appellant's Convictions for Sexual Battery (Counts 1 and 3) And Gross Sexual Imposition Are Not Supported By Sufficient Evidence.**

### Third Assignment of Error

**Appellant's Convictions Are Against The Manifest Weight Of The Evidence; Therefore, His Convictions Are In Violation Of The Ohio State Constitution And The Sixth and Fourteenth Amendments To The United States Constitution.**

---

[2] The State dismissed Counts Eight, Nine, and Ten on August 28, 2024.
[3] The trial court merged Counts One and Two and Counts Three and Four for purposes of sentencing.

-4-

**{¶10}** In his second and third assignments of error, Thompson argues that his sexual battery and gross sexual imposition convictions are based on insufficient evidence and are against the manifest weight of the evidence.

*Standard of Review*

**{¶11}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Therefore, we address each legal concept individually.

**{¶12}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶13} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶14} Before we address the merits of Thompson's arguments in his second and third assignments of error, we must acknowledge that Thompson challenges the sufficiency and the weight of the evidence supporting the jury's finding of guilt as to his sexual battery convictions in Counts One and Three. However, we decline to address the merits of these arguments because these counts were merged at sentencing, rendering any potential error harmless. *Accord State v. Sheldon*, 2019-

-6-

Ohio-4123, ¶ 11 (3d Dist.). This court has consistently held that we need not review sufficiency or weight of the evidence challenges for counts that are merged as allied offenses. *Id.* As long as the defendant is sentenced on the surviving count, any error in the finding of guilt for the merged count is harmless beyond a reasonable doubt. *Id.*

{¶15} That is precisely the situation here. That is, the trial court determined that Count One merged with Count Two, and Count Three merged with Count Four. The State then elected to have Thompson sentenced on Counts Two and Four. Because Thompson was ultimately sentenced on Counts Two and Four—not Counts One and Three—we need not address any arguments challenging the sufficiency or weight of the evidence regarding the jury's finding of guilt as to Thompson's sexual battery charges under Counts One and Three. *Accord id.* at ¶ 12; *State v. Ramos*, 2016-Ohio-7685, ¶ 13, 18 (8th Dist.). Therefore, we will begin by addressing Thompson's sufficiency of the evidence of the argument as it relates to his gross sexual imposition conviction.

*Sufficiency of the Evidence*

{¶16} As an initial matter, the record reveals that Thompson—except for a motion regarding Count Seven—failed to move the trial court for acquittal under Crim.R. 29(A) at the close of the State's evidence and renew that motion at the conclusion of his case or at the close of all evidence on all charged counts.

In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence."

*State v. Hurley*, 2014-Ohio-2716, ¶ 37 (3d Dist.), quoting *State v. Edwards*, 2004-Ohio-4015, ¶ 6 (3d Dist.). Based on this court's precedent, Thompson's failure to move for acquittal under Crim.R. 29(A) at the close of the State's evidence (except as to Count Seven), and then failing to renew the motion at the conclusion of his case-in-chief or at the conclusion of all evidence, waived all but plain error on appeal. *Id.* at ¶ 37.

{¶17} "However, '[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic.'" *Id.* at ¶ 38. "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.'" *Id.* Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Thompson's convictions. *See id.*

{¶18} Thompson was convicted of gross sexual imposition in violation of R.C. 2907.05, which provides, in its relevant part, that "[n]o person shall have sexual contact with another . . . when . . . [t]he offender purposely compels the other person . . . to submit by force or threat of force." R.C. 2907.05(A)(1). R.C.

2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶19} On appeal, Thompson argues that his gross sexual imposition conviction is based on insufficient evidence because the State failed to present sufficient evidence of the threat of force element of the offense. As a result, we will address only whether Thompson compelled J.H. to engage in sexual contact by force or threat of force.

{¶20} In addressing the force-or-threat-of-force language under Ohio's rape statute, the Supreme Court of Ohio has clarified that compelling a person by "force or threat of force" occurs when a defendant either uses physical force or creates a belief that force will be used if the victim does not submit. *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. The court also specified that a "threat of force can be inferred from the circumstances surrounding the sexual conduct." *Id. See also State v. Henry*, 2009-Ohio-3535, ¶ 26 (3d Dist.) (applying

the Supreme Court of Ohio's discussion of the force-or-threat-of-force element to Ohio's gross sexual imposition statute).

**{¶21}** Indeed, "'[f]orce' is defined as '*any* violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.'" (Emphasis in original.) *State v. Euton*, 2007-Ohio-6704, ¶ 60 (3d Dist.) (Preston, J., concurring in part and dissenting in part), quoting R.C. 2901.01(A)(1). *See also* R.C. 2907.05(D) ("A victim need not prove physical resistance" for the offender to be guilty of gross sexual imposition). "Nevertheless, . . . case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit 'by force or threat of force' depends upon the victim and offender's relationship." *State v. Wine*, 2012-Ohio-2837, ¶ 41 (3d Dist.). "[T]he key inquiry for determining whether the State presented sufficient evidence [of] the element of force is whether (based on the totality of the circumstances) the 'victim's will was overcome by fear or duress.'" *Id.* at ¶ 41, quoting *In re Forbess*, 2010-Ohio-2826, ¶ 40 (3d Dist.).

**{¶22}** On appeal, Thompson argues his conviction for gross sexual imposition is based on insufficient evidence because there was a complete absence of evidence showing any physical force, threats of force, or promises of probationary benefits to compel J.H.'s submission. Thompson's argument is unpersuasive. Rather, viewing the evidence in a light most favorable to the prosecution, the record reflects sufficient evidence of both actual force and an implied threat of force to establish that J.H.'s will was overcome by fear or duress.

{¶23} Determinately, the State presented sufficient evidence of actual force. Specifically, J.H. testified that, during a probation meeting, Thompson grabbed her arm and pulled her close to him in order to hug and kiss her. J.H. further testified that, immediately following the kiss, Thompson then grabbed her hand and moved it to the front of his pants, where she could feel his erect penis through his clothing. These acts fall squarely within the legal definition of force.

{¶24} Notwithstanding the State's presentation of sufficient evidence demonstrating actual force, the State presented sufficient evidence of a threat of force. That is, the evidence presented by the State at trial reflects that J.H.'s will was overcome by fear or duress. Critically, as J.H.'s probation officer, Thompson held supervisory and disciplinary authority over her, and the gross sexual imposition offense occurred in the coercive setting of a formal probation meeting. Indeed, J.H.'s trial testimony about feeling "nervous" and "paranoid" is direct evidence of the fear that this power imbalance created. (June 25-28, 2024 Tr., Vol. II, at 411). Therefore, a jury could have found beyond a reasonable doubt that J.H.'s will was overcome by the duress of resisting an official who controlled her freedom.

{¶25} For these reasons, we conclude that Thompson's gross sexual imposition conviction is based on sufficient evidence.

*Manifest Weight of the Evidence*

{¶26} Having concluded that Thompson's gross sexual imposition conviction is based on sufficient evidence, we next address Thompson's argument

that his sexual battery convictions under Counts Two and Four and his gross sexual imposition conviction are against the manifest weight of the evidence. In support of his manifest-weight-of-the-evidence argument, Thompson contends that the victims' testimonies were unreliable and not credible. Thompson asserts that the jury lost its way by convicting him in the face of the victims' initial denials, their behavior after the alleged incidents, and a complete lack of corroborating evidence to support their claims. Specifically, he notes that searches of his office produced no physical evidence, while reviews of his work computer and emails also revealed nothing incriminating.

{¶27} As with many sexual-abuse cases, this case presents the "classic 'he-said/she-said'" scenario, "with no physical evidence to corroborate the [victims'] allegation[s]." *In re N.Z.*, 2011-Ohio-6845, ¶ 79 (11th Dist.). "Thus, credibility of the witnesses was the primary factor in determining guilt." *Id.* As we noted above, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, 10 Ohio St.2d 230 at, paragraph one of the syllabus. "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.Z.* at ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *Id.* "'"A verdict is not against the manifest weight of the evidence

-12-

because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events.'"'" *State v. Missler*, 2015-Ohio-1076, ¶ 44 (3d Dist.), quoting *State v. Bean*, 2014-Ohio-908, ¶ 15 (9th Dist.), quoting *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.).

{¶28} In this case, the jury was presented with two conflicting narratives and, after weighing the evidence, found the victims' testimony to be credible. *Compare State v. White*, 2017-Ohio-1488, ¶ 51 (3d Dist.) (affirming convictions for rape and gross sexual imposition after the jury found the testimony of the four victims regarding the sexual abuse to be credible). Indeed, the jury had the superior first-hand perspective to evaluate the testimony of the victims, S.P. and J.H., as well as the testimony of Thompson, who took the stand in his own defense. Specifically, even though Thompson emphasizes the victims' initial denials in support of his argument, our review of the record reveals that the State presented evidence that their hesitation stemmed from a credible fear that, as probationers, no one would believe their word against that of their probation officer. The jury was entitled to find this explanation compelling and to believe the victims' ultimate testimony, which was internally consistent and partially corroborated by Facebook messages showing an inappropriate relationship.

{¶29} Furthermore, the jury heard Thompson's testimony, which included his own damaging admissions that undermined his credibility. In particular, Thompson conceded that he violated policy by visiting a victim's home at 10:00

p.m. on a Sunday and admitted that his behavior with the victims was inappropriate. The jury was free to conclude that these admissions of professional misconduct made his denials of the criminal acts less believable.

{¶30} Moreover, the jury proved that it did not lose its way, as it carefully parsed the evidence and acquitted Thompson on the two counts related to the third victim, C.S. This split verdict demonstrates the jury performed its function diligently, weighing the evidence as to each specific charge rather than blindly accepting the State's entire case.

{¶31} Accordingly, we conclude that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice that Thompson's sexual battery convictions under Counts Two and Four and his gross sexual imposition conviction must be reversed and a new trial ordered. Thus, Thompson's sexual battery convictions under Counts Two and Four and his gross sexual imposition conviction are not against the manifest weight of the evidence.

{¶32} Thompson's second and third assignments of error are overruled.

**First Assignment of Error**

**Trial Counsel Was Ineffective For Failing To Acquire A Certified Copy Of Defendant's Medical Records In Advance Of Trial.**

{¶33} In his first assignment of error, Thompson argues that his trial counsel was ineffective for failing to obtain a certified, admissible copy of his medical records in advance of trial. He contends that these records, which documented his

erectile dysfunction, were critical to his defense as they would have cast doubt on the validity of the victims' allegations.

*Standard of Review*

**{¶34}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶35}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

**{¶36}** In this case, Thompson argues that his trial counsel was ineffective, emphasizing that his trial counsel admitted that his failure to acquire certified medical records was a "mistake" that prevented the jury from seeing evidence of Thompson's erectile dysfunction, which he contends was crucial to undermining the credibility of the victims' allegations. However, even if we assume that Thompson's trial counsel's performance was deficient, Thompson's claim fails because he cannot demonstrate that he was prejudiced by the error. Importantly, Thompson cannot demonstrate the required prejudice because he was able to present his medical defense to the jury through his own extensive testimony regarding his cancer diagnosis and alleged erectile dysfunction. *See Cleveland v. Johns*, 2024-Ohio-3301, ¶ 33 (8th Dist.). Indeed, the medical records would have been merely cumulative, serving only to document what Thompson himself already told the jury. *Compare State v. Vulgamore*, 2021-Ohio-3147, ¶ 69 (4th Dist.) (holding that trial counsel was not ineffective for failing to obtain medical records that would have been merely cumulative of the defendant's own testimony and could have potentially harmed the defense).

{¶37} Furthermore, the records were of limited value, as they were from 2018—four years before the incidents—and did not contain a definitive medical diagnosis, but rather a self-report of symptoms for which Thompson refused treatment. Thus, given that the jury was fully aware of his alleged condition and still found him guilty on the counts related to S.P. and J.H., there is no reasonable probability that the admission of these inconclusive, four-year-old records would have changed the outcome of the trial. Importantly, this conclusion is bolstered by the fact that the jury acquitted Thompson of Counts Six and Seven pertaining to the allegations by the third victim, C.S. Therefore, we conclude that Thompson's trial counsel was not ineffective for failing to obtain an admissible copy of his medical records.

{¶38} Thompson's first assignment of error is overruled.

{¶39} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**MILLER and EPLEY, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge


_____
Christopher B. Epley

DATED:
/hls

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**